**UNITED STATES of America, Appellee,**

v.

**Michael KOEHLER, Appellant.**

No. 93–2062.

United States Court of Appeals,
Sixth Circuit.

Argued April 19, 1994.

Decided May 25, 1994.

Rehearing Denied July 1, 1994.

Stanley Neustadter (argued), New York, N.Y., for appellant.

Kathleen Moro Nesi (argued), Asst. U.S. Atty., Detroit, Michigan (Alan M. Gershel, U.S. Atty., on the brief), for appellee.

Before: BOGGS and SILER, Circuit Judges; and TIMBERS, Senior Circuit Judge *.

TIMBERS, Senior Circuit Judge.

Appellant Koehler appeals from a conviction entered after a jury trial in the Eastern District of Michigan, Lawrence P. Zatkoff, District Judge. He was convicted on three counts of engaging in transactions involving stolen and counterfeit automobile parts.

On appeal, Koehler contends that the court erred in failing to conduct a pre-trial inquiry into the drug arrest of his assigned attorney; that the evidence was insufficient to warrant his conviction on Count Three; and that the court erroneously enhanced his sentence.

We affirm.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This case arises from an undercover F.B.I. sting investigation into trafficking in stolen and counterfeit automobile parts. Undercover F.B.I. Agent Ronald Watson set up a business in Freeland, Michigan, in which he posed as a wholesale automobile parts broker. Between March 15, 1989 and April 2, 1990, Koehler and Watson engaged in numerous telephone conversations, secretly taped by Watson, in which Koehler indicated that he operated a sophisticated ongoing business dealing in stolen and counterfeit automobile parts. He conducted four such transactions with Watson.

Specifically, on April 3, 1989, Koehler sold Watson $3,380 worth of stolen axles; on May 15, 1989, Watson sold Koehler a $21,000 load of stolen spark plugs; on February 9, 1990, Watson sold Koehler 89 counterfeit air conditioner compressors for $2,670; and on April 2, 1990, Koehler gave Watson 107 counterfeit labels and 100 counterfeit containers. Koehler did not receive financial payment for the counterfeit labels and containers. Instead, the record establishes that Koehler provided the labels and containers in exchange for Watson providing him with a continuing supply of counterfeit air conditioner compressors.

In July 1992, Koehler was charged in a three-count indictment. Count One charged him with conspiring unlawfully to transport in interstate commerce stolen automobile parts with a value of $5,000 or more, knowing that they had been stolen, in violation of 18 U.S.C. §§ 371, 2314 (1988), and knowingly using a counterfeit mark in intentionally trafficking in automobile parts, labels, and containers, in violation of 18 U.S.C. § 2320 (1988). Count Two charged him with knowingly using a counterfeit mark in intentionally trafficking or attempting to traffic in approximately 89 air conditioner compressors, in violation of 18 U.S.C. § 2320. Count Three charged him with knowingly using a

* Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

counterfeit mark in intentionally trafficking or attempting to traffic in approximately 107 labels and 100 containers, in violation of 18 U.S.C. § 2320.

On November 20, 1992, prior to trial, Koehler's assigned attorney was arrested by state authorities for possession of cocaine. On November 23, 1992, the attorney's drug arrest was placed on the record before Judge Cleland, the district court judge to whom the case originally was assigned. The attorney stated that he had discussed his drug problem with Koehler and that Koehler had not wanted the attorney to bring the matter to the court's attention. Judge Cleland granted a continuance so that Koehler's attorney could complete discovery and participate in an in-patient treatment program.

On December 23, 1992, Koehler signed a disclosure statement declaring that he was aware of the charge against his attorney and that he wished to continue to be represented by him. On January 5, 1993, the case was transferred to Judge Zatkoff who presided over the trial. On February 18, 1993, Koehler was convicted on all three counts after a jury trial.

Koehler subsequently retained new counsel. On April 26, 1993, Koehler filed a motion for a new trial pursuant to Fed. R.Crim.P. 33. He contended that he had received ineffective assistance of counsel at trial because his trial attorney had been arrested on drug charges at the time of the trial. On May 12, 1993, the court held a hearing and announced an oral ruling denying the motion. The court stated that it had observed Koehler's attorney during the trial and that the attorney's performance had not been deficient.

On July 22, 1993, Koehler filed a renewed motion for a new trial. He raised four arguments that were not raised in his April 26, 1993 motion and that are not raised on this appeal.

On July 29, 1993, the court entered an order and opinion denying the renewed motion and held a sentencing hearing. Based on its finding that Koehler was "in the business" of dealing in stolen property, the court enhanced Koehler's sentence four levels pur-suant to U.S.S.G. § 2B1.2(b)(4)(A) (1992). He was sentenced to 24–month terms of imprisonment on each count to be served concurrently, plus a 2–year term of supervised release, plus a $150 special assessment. This appeal followed.

## II.

### (A) COURT'S DUTY TO CONDUCT A PRE–TRIAL INQUIRY

Koehler contends that the court should have conducted a pre-trial inquiry into whether his assigned attorney was fit to conduct a competent defense and whether Koehler wished to continue being represented by an attorney who had been arrested on drug charges. He contends that the court's failure to conduct such an inquiry resulted in his receiving ineffective assistance of counsel at trial.

#### (1) *Timeliness of Koehler's Motion for a New Trial*

 Koehler did not assert this contention until his April 26, 1993 motion for a new trial. Unless a motion for a new trial is based on newly discovered evidence, it must be filed within seven days of the verdict or within such further time as the court may fix during that seven-day period. Fed. R.Crim. P. 33. If the motion is untimely, the court lacks jurisdiction to consider it on the merits. *United States v. Smith,* 331 U.S. 469, 475–76 (1947).

 Koehler's April 26, 1993 motion for a new trial was filed more than two months after the February 18, 1993 jury verdict—well past the Rule 33 seven-day limit. During that seven-day period, the court did not grant Koehler an extension of time in which to file his motion. Furthermore, Koehler's motion was not based on newly discovered evidence. Prior to trial, he signed a disclosure statement in which he acknowledged that he was aware of the felony charge against his attorney and stated that he wished to continue with that attorney. The facts supporting Koehler's claim were within his knowledge at the time of trial. *United States v. Seago,* 930 F.2d 482, 488–89 (6 Cir.1991).

We hold that, since Koehler's motion for a new trial was untimely, the court lacked jurisdiction to consider it on the merits.

#### (2) *Merits of Koehler's Claim*

■ Koehler contends that the court had a duty to conduct a pre-trial inquiry *sua sponte,* which arose at the time the attorney's drug arrest was brought to its attention, rather than by any subsequent formal motion, objection, or request. According to Koehler, he was not required to file a Rule 33 motion to preserve his claim for appellate review. Even if we were to accept such contention (which we do not), we would reject his claim that the court had a duty to conduct such a pre-trial inquiry on the facts of this case.

Prior to trial, Koehler clearly was aware of his attorney's arrest. He had agreed to continue being represented by that attorney. On November 23, 1992, the attorney stated on the record before Judge Cleland that he had discussed his drug problem with Koehler who did not want him to bring the matter to the court's attention. On December 23, 1992, Koehler signed a disclosure statement that he was aware of the charge against the attorney and wished to continue to be represented by that attorney. Although the record does not indicate that this disclosure statement was brought to the attention of the court, it confirms the accuracy of the attorney's November 23, 1992 representations to Judge Cleland.

Koehler contends that he agreed to continue to be represented by the attorney only because he was concerned that he could not get a continuance that would allow a new attorney sufficient time to prepare his defense. The record does not support this contention. At the same hearing at which Koehler's attorney informed the court of his drug arrest, the court granted a continuance so that the attorney could complete discovery and participate in an in-patient treatment program.

Furthermore, prior to trial, there was no indication that the attorney's drug arrest would create a conflict of interest between Koehler and the attorney. There was no nexus between Koehler's criminal charges and those of his attorney. Koehler and his attorney were not being prosecuted by the same office. Thus, there was. no indication that the attorney would breach his duty of loyalty to Koehler. *Taylor v. United States,* 985 F.2d 844, 846 (6 Cir.1993). Judge Zatkoff, who presided over Koehler's trial, specifically found at the May 12, 1993 hearing on the new trial motion that Koehler's attorney had conducted a competent defense. This finding indicates that the attorney's drug arrest did not result in a conflict of interest or in Koehler's receiving ineffective assistance of counsel.

Koehler nevertheless contends that we should impose retroactively a per se rule requiring reversal of his conviction because the court did not conduct a pre-trial inquiry into his attorney's fitness or into the sincerity of Koehler's desire to continue being represented by the attorney. We reject his contention.

We hold that, on the facts of this case, the court did not have a duty to conduct such a pre-trial inquiry.

### (B) SUFFICIENCY OF THE EVIDENCE AS TO COUNT THREE

■ Koehler also contends that insufficient evidence supports his conviction on Count Three which charged that he knowingly used a counterfeit mark in intentionally trafficking or attempting to traffic in approximately 107 labels and 100 containers, in violation of 18 U.S.C. § 2320. Section 2320(d)(2) defines "traffic" as to "transport, transfer, or otherwise dispose of, to another, as consideration for anything of value". Koehler contends that, since Agent Watson never paid for the counterfeit labels and containers, the evidence did not prove that Koehler received "anything of value" and Koehler cannot be guilty under Count Three.

In reviewing a jury's verdict under a sufficiency of the evidence standard, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *Jackson*

*v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original).

The government did not assert that Koehler received financial payment. Instead, it asserted that Koehler provided the counterfeit labels and containers in exchange for Watson providing him with a continuing supply of counterfeit air conditioner compressors. Such "good will" can be considered a thing of value in the form of an intangible asset. *Newark Morning Ledger Co. v. United States,* 113 S.Ct. 1670, 1675–76 (1993).

Viewing the evidence in the light most favorable to the prosecution, *Jackson v. Virginia, supra,* 443 U.S. at 319, we believe that a rational trier of fact could have found beyond a reasonable doubt that Koehler supplied the counterfeit labels and containers in exchange for Watson's "good will" and that such "good will" constituted a thing of value.

We hold that sufficient evidence supported the jury's verdict as to Count Three.

## (C) SENTENCING ENHANCEMENT

■ Koehler also contends that the court erred in enhancing his sentence pursuant to U.S.S.G. § 2B1.2(b)(4)(A) (1992). The Guidelines provide that, if the offense was committed by "a person in the business of receiving and selling stolen property, [an] increase by 4 levels" would be appropriate. U.S.S.G. § 2B1.2(b)(4)(A) (current version at U.S.S.G. § 2B1.1(b)(5)(B) (1993)). Koehler contends that this enhancement provision does not apply to him, since he allegedly was a legitimate businessman who, in his 24 years in the auto parts business, had engaged in only two transactions involving stolen property.

We recently held that, in deciding whether enhancement is warranted, the sentencing court must determine "(1) if stolen property was bought and sold, and (2) if the stolen property transactions encouraged others to commit property crimes". *United States v. Warshawsky,* 20 F.3d 204, 215 (6 Cir.1994). We believed that the enhancement was warranted, since the Warshawsky brothers' seven stolen property transactions encouraged others to commit property crimes. *Id.*

We explained there that the enhancement applies to a "fence"—that is, a person who receives stolen property—and not to a person who sells property that he himself has stolen because a fence encourages others to steal. *Id.* at 214. We reasoned that "[t]he Sentencing Commission has decided that fences deserve longer sentences than mere thieves because a sentence based solely on 'the amount of (stolen) property' recovered by the police 'is likely to underrepresent the scope of their criminality and the extent to which [the defendant] encourage[s] or facilitate[s] other crimes'." *Id.* at 214–15 (quoting U.S.S.G. § 2B1.2, comment. (backg'd)).

As in *Warshawsky,* the record in this case establishes that Koehler both bought and sold stolen automobile parts that he did not steal himself. Although the prosecution proved only two stolen property transactions, the court found that Koehler's criminal activity was "not a one time thing, or a sporadic thing" but rather "was a part, at least a part of [Koehler's] business". This factual finding is supported by Koehler's many taped conversations with Watson in which Koehler indicated that he operated a sophisticated ongoing business dealing in stolen automobile parts. As in *Warshawsky,* such activity encouraged theft by others.

We hold that the court's four-level enhancement of Koehler's sentence pursuant to § 2B1.2(b)(4)(A) was proper.

### III.

To summarize:

Koehler's motion for a new trial was untimely. On the facts of this case, the court did not have a duty to conduct a pre-trial inquiry into the attorney's fitness or into Koehler's desire to continue to be represented by him. The evidence was sufficient to support Koehler's conviction on Count Three. The court did not err in enhancing his sentence.

Affirmed.