# PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

LARRY FRICKE HABEGGER, a/k/a Larry
Frick Habegger, a/k/a Harry Frick
Habegger,
                    *Defendant-Appellant.*

No. 03-4473

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Frank W. Bullock, Jr., District Judge.
(CR-01-465; CR-02-351)

Argued: May 4, 2004

Decided: June 7, 2004

Before WILKINS, Chief Judge, DUNCAN, Circuit Judge, and
Bobby R. BALDOCK, Senior Circuit Judge of the
United States Court of Appeals for the Tenth Circuit,
sitting by designation.

Reversed and remanded with instructions by published opinion. Chief
Judge Wilkins wrote the opinion, in which Judge Duncan and Senior
Judge Baldock joined.

## COUNSEL

**ARGUED:** William Carlton Ingram, Jr., Assistant Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,

Greensboro, North Carolina, for Appellant. Michael Francis Joseph, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

## OPINION

WILKINS, Chief Judge:

Larry Fricke Habegger appeals his conviction and sentence for trafficking in counterfeit goods, *see* 18 U.S.C.A. § 2320 (West 2000 & Supp. 2004). Because there is insufficient evidence to establish the "trafficking" element of this offense, we reverse Habegger's conviction and remand with instructions.

### I.

Habegger owns Sox-4-U, a clothing business in Troy, North Carolina. In 1999, Larry McKenzie, who owns a clothing business in Asheboro, North Carolina, purchased 30,000 to 40,000 Nike T-shirts from Habegger. After McKenzie resold the T-shirts, he was notified by Nike's trademark attorneys that the shirts were counterfeit. As part of a settlement, McKenzie paid Nike $16,700—the total profit he had made on the shirts.

In July 2001, Habegger contacted McKenzie and offered to sell him some Adidas T-shirts. McKenzie notified the trademark attorneys for Adidas (the same attorneys who represented Nike in connection with the earlier counterfeit shirts) and, in cooperation with them and United States Customs agents, arranged a purchase of the Adidas shirts. One of Habegger's employees, Dennis Thompson, delivered samples of Adidas T-shirts to McKenzie. After reviewing the samples, McKenzie agreed to purchase approximately 12,600 T-shirts, subject to Habegger providing proof that the shirts were authentic. Habegger later sent McKenzie a copy of an Adidas invoice as proof of authenticity. In September 2001, Rodney Spears, an associate of

Habegger who was in the clothing business in New Jersey, shipped the T-shirts to McKenzie. Customs agents subsequently seized the shirts. Meanwhile, Thompson and Habegger began calling McKenzie daily demanding payment. Following a conversation with Habegger and Spears, McKenzie sent a letter to them indicating that payment would be made by September 25. However, no payment was ever made.

On September 26, 2001, Customs agents executed a search warrant at Sox-4-U. While the agents were there, UPS arrived to pick up a package. Before the package left the premises, the agents learned that it was being sent to Spears; they then seized the package and opened it. The package contained 24 pairs of socks, including 12 pairs with Eddie Bauer labels attached—labels that were later determined to be counterfeit. Habegger told the agents that he was sending the socks to Spears "as examples of samples that [Habegger] could provide to him." J.A. 87.

In addition to observing thousands of socks in the Sox-4-U ware-house, the agents discovered approximately 12,500 additional Eddie Bauer sock labels in the Sox-4-U offices. Habegger informed the agents that he had purchased the labels from an unidentified individual "off the back of a pickup truck." *Id.* at 92. Habegger also stated that he "didn't see a problem with putting those labels on generic socks that he had at his warehouse." *Id.* at 95. However, when the agents showed him one of the labels and pointed out the trademark designation, Habegger responded that "we don't use these at our warehouse." *Id.* (internal quotation marks omitted). The agents later learned that the labels were printed, without authorization from Eddie Bauer, by a North Carolina printing company and that they were printed for a company that had conducted business with Habegger.

Habegger was subsequently indicted on two counts of trafficking in and attempting to traffic in counterfeit goods, *see* 18 U.S.C.A. § 2320. Count One charged that Habegger trafficked in and attempted to traffic in 12,600 counterfeit Adidas T-shirts. Count Two alleged that Habegger trafficked in and attempted to traffic in 12 pairs of counterfeit Eddie Bauer socks (the socks he was sending to Spears). Following a jury trial, Habegger was acquitted on Count One but convicted on Count Two. The district court sentenced Habegger to 19

months imprisonment. Further, because the court determined that Habegger's offense violated his probation for a previous conviction for trafficking in counterfeit goods, the district court revoked that probation and imposed an additional consecutive term of seven months imprisonment.

## II.

Habegger contends that the evidence is insufficient to support his conviction. In considering a sufficiency challenge, our role is limited to considering whether "there is substantial evidence, taking the view most favorable to the Government, to support" the verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942). We must bear in mind that "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994) (citation omitted). Reversal for insufficient evidence is reserved for cases in which "the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978).

Habegger was convicted of violating 18 U.S.C.A. § 2320(a), which prohibits "intentionally traffic[king] or attempt[ing] to traffic in goods or services and knowingly us[ing] a counterfeit mark on or in connection with such goods or services." To convict Habegger under this provision, the Government was required to prove that he "(1) trafficked or attempted to traffic in goods or services; (2) did so intentionally; (3) used a counterfeit mark on or in connection with such goods and services; and (4) knew the mark was counterfeit." *United States v. Giles*, 213 F.3d 1247, 1249 (10th Cir. 2000); *accord United States v. Sultan*, 115 F.3d 321, 325 (5th Cir. 1997).

Habegger argues only that the Government failed to prove the first element—that he "trafficked or attempted to traffic" in the 12 pairs of counterfeit socks. For purposes of § 2320, Congress provided that "the term 'traffic' means transport, transfer, or otherwise dispose of, to another, *as consideration for anything of value*, or make or obtain control of with intent so to transport, transfer, or dispose of." 18 U.S.C.A. § 2320(e)(2) (emphasis added). Habegger contends that no evidence shows that he was sending the counterfeit socks to Spears

"as consideration for anything of value"; rather, the evidence demonstrates that Habegger was providing the socks as samples, for which Spears had not promised payment or anything else in return. We agree.

In this context, "consideration" means "[s]omething of value (such as an act, a forbearance, or a return promise) received by a promisor from a promisee." *Black's Law Dictionary* 300 (7th ed. 1999). For an act to constitute consideration, it must be "bargained for," that is, "sought by the promisor in exchange for his promise and . . . given by the promisee in exchange for that promise." *Restatement (Second) of Contracts* § 71(1)-(2) (1981). Habegger notes that the only evidence presented at trial regarding his or Spears' understanding of the shipment of socks was Habegger's statement to the Customs agents that he was sending the socks to Spears "as examples of samples that [Habegger] could provide to him." J.A. 87. The Government essentially agrees with this characterization of the evidence, conceding that "there is no evidence of payment for the twelve pairs of socks." Br. for Appellee at 12. Still, the Government argues that based on evidence of an existing business relationship between Habegger and Spears, the jury could reasonably conclude that Habegger was sending the sample socks "to maintain the good will of Mr. Spears." *Id.* The Government asserts that Habegger's "desire . . . to please a valued customer would be a thing of value which would support the conviction." *Id.* (citing *United States v. Koehler*, 24 F.3d 867, 871 (6th Cir. 1994) (holding that a defendant who provided counterfeit labels and containers to an undercover agent in exchange for a continuing supply of other counterfeit items received "a thing of value" in the form of the agent's "good will" (internal quotation marks omitted))).

The problem with the Government's argument is that, regardless of whether Habegger intended to "please" Spears by sending him the sample socks, there is no evidence that Spears promised to do anything in connection with the socks. *See Restatement (Second) of Contracts* § 72 cmt. a (1981) (explaining that consideration "requires an element of exchange"). For example, no evidence indicates that Spears had promised to pay for the socks, to buy additional socks if he found the samples acceptable, or even to examine the socks and consider purchasing more. Indeed, there is no evidence of any com-

munication between Habegger and Spears regarding the shipment of socks.

The Government argues that the separate transaction involving Adidas T-shirts demonstrates an existing business relationship between Habegger and Spears. But that evidence, without more, establishes at most that Habegger was sending the sample socks to Spears *hoping* that he would place an order for a shipment of socks. Even if a potential order constitutes a "thing of value," the evidence fails to show that Habegger was sending the socks to Spears "as consideration for" such an order. For a shipment of goods to constitute consideration, there must be more than a mere hope on the part of the sender that the recipient will purchase goods in the future. *See id.* § 71 cmt. b, illus. 2 (explaining that when one party gratuitously sends goods to a second party and the second party later promises to pay for the goods, there is no consideration for that promise, even if the first party "secretly hope[d]" that the second party would pay for the goods, at the time the gift was made). Rather, consideration must be the subject of an existing agreement. *See id.* § 71(1)-(2). Because there is no proof of any agreement between Habegger and Spears regarding the sample socks, the evidence is insufficient to show that Habegger was sending those socks to Spears as consideration for something of value.[1]

---

[1]As noted above, the Government cites *Koehler*, in which the Sixth Circuit upheld a conviction under § 2320 because the defendant supplied counterfeit items to an undercover agent "in exchange for [the agent's] 'good will' and . . . such 'good will' constituted a thing of value." *Koehler*, 24 F.3d at 871. But unlike the present case, in *Koehler* there was apparently evidence of an agreement (at least implicitly) between Koehler and the agent that Koehler would "provide[ ] the counterfeit labels and containers in exchange for [the agent] providing him with a continuing supply of counterfeit air conditioner compressors," *id.*; *see id.* at 868. Moreover, the arguments and analysis in *Koehler* focused on whether Koehler received "anything of value" for the counterfeit items he supplied, *see id.* at 870-71; the Sixth Circuit did not specifically address whether Koehler provided the items "as consideration for" something of value.

In addition, the Government apparently contends that the evidence is sufficient to convict Habegger of attempting to traffic in *other* counterfeit

### III.

For the reasons set forth above, we conclude that the evidence fails to prove an essential element of the offense of conviction: that Habegger "traffic[ked] or attempt[ed] to traffic" in the counterfeit socks, 18 U.S.C.A. § 2320(a). We therefore reverse Habegger's conviction and remand to the district court with instructions to enter a judgment of acquittal on Count Two.[2]

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

socks, based on the thousands of socks and unattached labels found at Sox-4-U. *See* Br. for Appellee at 11 (arguing that Habegger was sending the 12 pairs of socks to Spears "as samples of what could be provided" and that this shipment "constitutes a substantial step toward the completion of the crime"). This argument, however, overlooks that Habegger was not charged with attempting to traffic in socks other than those contained in the shipment to Spears. Count Two of the indictment specifically alleged that Habegger "intentionally did traffic and attempt to traffic in goods, that is, *approximately 12 pairs of socks*." J.A. 11 (emphasis added).

[2]Because we reverse Habegger's conviction, we do not address his arguments concerning sentencing.