Affirmed by published opinion. Judge DUNCAN wrote the opinion, in which Judge SHEDD joined. Judge FLOYD ■wrote a separate opinion concurring in part, dissenting in part, and dissenting from the judgment.
OPINION
DUNCAN, Circuit Judge:
A jury convicted appellants Chong Lam and Siu Yung Chan (collectively “Appellants”) of conspiracy to traffic in counterfeit goods, trafficking in counterfeit goods, and smuggling goods into the United States. The counterfeiting convictions were based on the jury’s determination that a mark displayed on goods Appellants imported into the United States was a counterfeit of a trademark registered to fashion designer Burberry Ltd. (“Burberry”), depicting its signature plaid pattern (the “Burberry Check mark”). On appeal, Appellants advance various challenges to their convictions for trafficking in counterfeit goods under 18 U.S.C. § 2820(a). They also assert that certain comments made by prosecutors at trial necessitate a retrial. Because we find these arguments lacking in merit, we affirm.
I.
A.
The convictions in this case arise out of Appellants’ participation in the manufacture, import, and sale of handbags and wallets bearing counterfeit trademarks. Since 1999, Appellants have owned or otherwise controlled at least 10 companies incorporated in the United States that engaged in the importation of both legitimate and counterfeit handbags and wallets.[1] Lam also had authority over at least three companies located in China and Hong Kong that engaged in the manufacture and export of such goods.[2] Appellants transferred significant amounts of money among these various enterprises. They also used the United States-based companies’ names interchangeably when importing goods, seemingly for the purpose of evading detection by U.S. Customs and Border Protection (“CBP”).
Between 2002 and 2005, CBP issued seizure notices to a number of the corporations controlled by Appellants, each time informing the individual company that certain goods it had imported into the United States were being seized because CBP had determined that the goods were labeled with what were likely counterfeit trademarks.[3] The marks CBP identified as *194 counterfeit were copies of legitimate marks registered to various luxury handbag and wallet manufacturers, including Burberry. These seizures occurred at several ports throughout the United States, including Houston, Texas; Newark, New Jersey; Los Angeles, California; New York, New York; and Norfolk, Virginia. Appellants’ decision to spread their importing activities among multiple ports also appeared to be a ploy to evade CBP.
The specific goods at issue here were seized in 2005 at the port of Norfolk, Virginia. CBP became aware in August 2005 that shipments imported to Global Import, Inc. (“Global Import”) — one of the companies controlled by Appellants — contained what appeared to be counterfeit handbags. It thereafter flagged all subsequent shipments imported to Global Import, opening and examining containers included in such shipments. This effort led to three seizures, occurring on September 19, October 3, and October 10, 2005. On each occasion, CBP opened containers destined for Global Import and found goods bearing what appeared to be marks registered to Burberry and other luxury designers[4] “secreted” within legitimate handbags and gym bags. J.A. 1204. Specifically, CBP found a layer of legitimate merchandise on the top and bottom of each container, followed by a cardboard divider, concealing the goods bearing allegedly counterfeit marks within the interior of the container. CBP seized goods displaying marks it determined were likely counterfeit. These goods form the basis for the charges brought against Appellants.
B.
On March 26, 2009, a federal grand jury sitting in the Eastern District of Virginia issued a superseding indictment charging Appellants[5] with conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 371, trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a), and smuggling goods into the United States in violation of 18 U.S.C. § 545.
Appellants’ first trial, lasting from January 11-25, 2010, resulted in a hung jury. Appellants’ contentions on appeal arise from their convictions in the second trial.
Prior to the second trial, Appellants filed a motion in limine seeking to have the district court declare the phrase “substantially indistinguishable,” as used in 18 U.S.C. § 2320, unconstitutionally vague. Section 2320(a) criminalizes “intentionally trafficfking] or attempting] to traffic in goods or services and knowingly us[ing] a counterfeit mark on or in connection with such goods or services, ... the use of which is likely to cause confusion, to cause mistake, or to deceive.” Section 2320(e)(1) uses the disputed term “substantially indistinguishable” in its definition of “counterfeit mark,” which it defines as a “spurious mark” that, inter alia, “is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use.” Appellants argued that an average person could not understand the meaning of “substantially indistinguishable” in this context *195 and that the vagueness of the term encouraged arbitrary enforcement of the anticounterfeiting statute. They requested that the district court either declare the statute unconstitutionally vague or narrowly construe the language. The district court denied the motion.
C.
Appellants’ retrial began on June 2, 2010. As relevant here, the government presented evidence that Burberry had registered the Burberry Check mark — a mark depicting Burberry’s signature plaid pattern, created by intersecting red, white, black, and grey lines against a tan background — with the United States Patent and Trademark Office (“USPTO”) in 1996. It demonstrated that Burberry also has a registered trademark for an equestrian knight symbol (the “Burberry Equestrian mark”). The government introduced into evidence examples of authentic Burberry handbags displaying the Burberry Check mark and authentic handbags displaying the combination of the Burberry Check mark and the Burberry Equestrian mark.
In addition, government witnesses testified that, in 2005, Burberry instituted a civil suit against Marco Leather Goods, Ltd. (“Marco Leather Goods”), another company controlled by Appellants, because the company had registered for copyright protection an image that appeared to be the Burberry Check mark with an equestrian knight similar to the Burberry Equestrian mark superimposed over it. Appellants refer to this pattern as the “Marco mark,” even though it was never registered as a trademark. This suit ended in a consent judgment requiring Marco Leather Goods to transfer the copyright to Burberry and to abandon an application it had filed with the USPTO seeking to register the same image.
Finally, the government produced testimony describing the seizures of goods imported by Appellants detailed above. A CBP agent explained the manner in which the wallets and handbags displaying allegedly counterfeit marks were packaged and transported. The government also introduced a number of samples of the goods seized from Norfolk that bore the allegedly counterfeit Burberry Check mark. Significantly, these wallets and handbags displayed Appellants’ so-called Marco mark— the above-described pattern, which consisted of a plaid pattern similar to the Burberry Check mark with an equestrian knight superimposed over it.[6] At the close of the government’s evidence, Appellants filed a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29, which the district court denied.
In their case in chief, Appellants introduced expert testimony describing the combination of the plaid pattern and the knight overlay displayed on the goods seized at Norfolk as a “composite mark that consists of a number of components.” J.A. 1381. Appellants’ expert opined that a mark combining the Burberry Check mark and the Burberry Equestrian mark could qualify for trademark protection independently from both of the individual marks.
At several points during the trial, the government suggested that whether an allegedly counterfeit mark was substantially indistinguishable from a legitimate mark should be analyzed from the viewpoint of a hypothetical “reasonable consumer of ordinary intelligence.” J.A. 1368. The government made such statements at least *196 twice during its cross-examination of Appellants’ witnesses. During closing argument, the government also asserted several times that the jury should look to “the perspective of the average person” in comparing the goods. J.A. 1558. The district court sustained Appellants’ objections to these comments as incorrect statements of the law.
In response to Appellants’ objections and directly following the government’s closing argument, the district court instructed the jury as follows:
Obviously, you are to be guided by the instructions on the law that the court will provide to you. A lot of the lawyers have made references to what the law is or what they think it might be. But these instructions, I hope, will clear up, if there was some confusion.... Listen to me when it comes to what the law is.
J.A. 1559-60. At the beginning of formal jury instructions, the district court further informed the jury that “it is your sworn duty to follow the law as I am now in the process of defining for you. You must follow all of my instructions as a whole.” J.A. 1560-61.
With regard to whether the mark on Appellants’ goods was a counterfeit of the Burberry Cheek mark, the district court instructed the jury:
[Y]ou have to determine whether or not the mark that is alleged to be counterfeit is identical to or substantially indistinguishable from the mark that is registered on the same goods in the Principal Register of the [USPTO].... [I]n order to carry out your responsibility as it relates to that part of these instructions, you have to compare the marks, the mark on the alleged to be counterfeit and the mark that is the genuine mark. Now, you do that, and you make a decision. This is based on your side-by-side comparison, use of your own eyes, and any other evidence that came into the record that might help you in that task. But it is for you to decide. If you decide that the mark is not identical or substantially indistinguishable, that pretty much ends the inquiry. That means it is not counterfeit.
J.A. 1587.
During deliberations, the jury submitted a question to the district court, asking if “when comparing the Marco plaid on the purses seized in Norfolk to the [Burberry Check mark], should we consider the presence of the Marco knight?” J.A. 1603. The district court responded:
You have heard evidence and argument that you can accept certain facts. On the one hand, the defendants presented evidence and argued that you accept as a fact that the plaid plus the Marco knight is a composite mark that should be compared as a composite mark with the [Burberry Check mark]. On the other hand, the government has put on evidence and argued that the plaid pattern alone on the alleged counterfeit bag is violative, meaning substantially indistinguishable, from the [Burberry Check mark]. Depending on the way you find facts, you may consider the Marco knight in comparing the marks. That’s not the province of the court, it’s the province of the jury. Of course, the defendants also contend that the plaid by itself is not substantially indistinguishable and therefore not counterfeit.
J.A. 1603-04. Appellants did not object to this response.
On June 10, 2010, the jury found Appellants guilty of conspiracy to traffic in counterfeit goods, trafficking in counterfeit goods, and smuggling goods into the United States. The counterfeiting-related convictions were based, in part, on its determination that the plaid displayed on the *197 goods seized from Appellants at Norfolk was a counterfeit of the Burberry Check mark.
D.
Appellants renewed their motion for acquittal, pursuant to Rule 29(c), and moved for a new trial, pursuant to Federal Rule of Criminal Procedure 33, on August 11, 2010. They argued that the evidence presented at trial was insufficient as a matter of law to sustain a guilty verdict under § 2320 and that a new trial was required because the government’s allegedly erroneous statements of law with respect to the perspective from which the jury was to determine whether a mark was counterfeit prejudicially affected their rights such that they were deprived of a fair trial.
The district court denied both motions. In a memorandum opinion entered December 14, 2010, it first held that the evidence presented at trial was sufficient to allow the jury to find that the mark used on Appellants’ goods was substantially indistinguishable from the Burberry Check mark — a question “exclusively within the purview of the jury.” J.A. 2861.
The district court next considered Appellants’ argument that remarks made by the government necessitated a new trial. It held that the government’s comments were improper because, in its estimation, they incorrectly stated the perspective from which the jurors were to consider whether a mark was counterfeit. It next considered the six factors our circuit takes into account when determining whether a prosecutor’s comments were so prejudicial that they deprived a defendant of a fair trial: (1) whether the government’s remarks mislead the jury, (2) whether they were extensive, (3) the strength of the evidence supporting conviction absent the comments, (4) whether the government deliberately made the comments to mislead the jury, (5) whether the defendant invited the comments, and (6) the presence of a curative instruction. See United States v. Lighty, 616 F.3d 321, 361 (4th Cir.2010). After thoroughly reviewing the trial transcript, the district court found that, although the government’s comments were misleading and extensive, and Appellants did not invite the comments, the government did not make the comments with the purpose of deliberately misleading the jury. It also found that the government presented enough evidence to support Appellants’ convictions in the absence of the misleading remarks. Finally, the district court considered its curative instructions, finding that they removed any prejudice the government’s comments created. The district court based its denial of Appellants’ Rule 33 motion on this final determination. Appellants timely appealed.
II.
On appeal, Appellants advance four main arguments, all stemming from their convictions for “intentionally traffic[king] or attempting] to traffic in goods or services and knowingly us[ing] a counterfeit mark on or in connection with such goods or services, ... the use of which is likely to cause confusion, to cause mistake, or to deceive.” 18 U.S.C. § 2320(a). As mentioned above, § 2320 goes on to define “counterfeit mark” as, as relevant here, “a spurious mark ... that is identical with, or substantially indistinguishable from, a [registered] mark ... the use of which is likely to cause confusion, to cause mistake, or to deceive.” 18 U.S.C. § 2320(e)(1)(A). To obtain a conviction under § 2320(a), the government was required to prove that Appellants “ ‘(1) trafficked or attempted to traffic in goods or services; (2) did so intentionally; (3) used a counterfeit mark on or in connection with such goods and services; and (4) knew the mark was coun *198 terfeit.’ ” United States v. Habegger, 370 F.3d 441, 444 (4th Cir.2004) (quoting United States v. Giles, 213 F.3d 1247, 1249 (10th Cir.2000)).
Appellants first challenge the district court’s denial of their motion for judgment of acquittal, arguing that the evidence presented at trial was insufficient to support their convictions. Second, they contend that the district court’s response to the jury’s question regarding the significance of the knight superimposed over the plaid pattern displayed on Appellants’ goods was erroneous. Third, they argue on appeal, as they did below, that § 2320 is unconstitutionally vague. Finally, Appellants contend that the district court abused its discretion by denying their motion for a new trial in light of various comments made by the government during the trial. We address these contentions in turn.
A.
Appellants make two arguments regarding the sufficiency of the evidence. First, they contend, as they did in their motion pursuant to Rule 29, that the government’s evidence was insufficient to allow the jury to conclude that the mark used on their goods was a counterfeit of the Burberry Check mark. Second, Appellants argue, for the first time on appeal, that the government’s evidence was insufficient to allow the jury to find that they had knowledge that the mark displayed on their goods was a counterfeit, as § 2320(a) requires.
Under Rule 29, a district court, “on the defendant’s motion[,] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.” Fed.R.Crim.P. 29(a). We review de novo a district court’s denial of a Rule 29 motion, “upholding] a jury verdict if there is substantial evidence, viewed in the light most favorable to the [gjovernment, to support it.” United States v. Perkins, 470 F.3d 150, 160 (4th Cir.2006). “[Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant’s guilt beyond a reasonable doubt.” United States v. Burgos, 94 F.3d 849, 862 (4th Cir.1996) (en banc).
1.
Appellants’ principal contention as to why the evidence was insufficient to allow a jury to conclude that the mark displayed on their goods was a counterfeit is that it consists of a plaid background and equestrian knight overlay, whereas the Burberry Check mark does not include an equestrian knight. They assert that “[n]o rational jury would conclude that a mark with a knight integrated onto it was a counterfeit of a mark without a knight.”[7] Appellants’ *199 Br. 23. We disagree, finding that the marks are similar enough to allow a reasonable jury to draw such a conclusion— especially in light of the evidence demonstrating that Burberry often sells goods displaying the Burberry Check mark and the Burberry Equestrian mark together.
A mark does not have to be an exact replica of a registered trademark to be deemed a counterfeit. As stated, § 2320 defines a counterfeit mark as “identical to or substantially indistinguishable from” a registered trademark. The Eleventh Circuit has observed that “[t]he legislative history of Section 2320 indicates that ... ‘a mark need not be absolutely identical to a genuine mark in order to be considered counterfeit. Such an interpretation would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways.’ ” United States v. Guerra, 293 F.3d 1279, 1288 (11th Cir.2002) (quoting Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. 31,675 (1984)). This court has only once held that two marks were so divergent that, as a matter of law, no rational jury could find one was a counterfeit of the other. In a civil counterfeiting case under the Lanham Act,[8] we found that a dog toy manufacturer’s use of the name “Chewy Vuiton” and a monogram design featuring the letters “CV” was, as a matter of law, not substantially indistinguishable from the trademarked “Louis Vuitton” and “LV” designs owned by Louis Vuitton Malletier. See Louis Vuitton Malletier SA v. Haute Diggity Dog, LLC, 507 F.3d 252, 269 (4th Cir.2007). We based our decision upon marked differences between the legitimate and allegedly counterfeit goods, including their distinct names, the different letters used in the respective monograms, their divergent design and color patterns, and that the allegedly counterfeit mark was displayed on dog toys, rather than handbags. See id. (“In selling ‘Chewy Vuiton’ dog toys, Haute Diggity Dog is not selling knock-off LOUIS VUITTON handbags with a counterfeit LV mark, and no reasonable trier of fact could so conclude.”). Thus, our case law suggests that a good displaying an allegedly counterfeit trademark must possess pronounced differences from a legitimate trademarked good for us to declare that no rational jury could find that it was a counterfeit.
*200 Here, viewing the evidence in the light most favorable to the government, we find that Appellants’ mark was similar enough to the legitimate Burberry mark that we cannot say, as a matter of law, that no rational jury could conclude Appellants’ mark was a counterfeit. We base this holding on the similarity of the two marks. The plaid pattern displayed on Appellants’ goods differs only slightly from the Burberry Check mark — in color and in the shape of the boxes formed by the stripes. Moreover, although the Burberry Check mark does not include an equestrian knight, it is undisputed that Burberry has obtained trademark protection for an equestrian knight mark, and that it often sells handbags and other goods displaying a combination of the two marks. It is also undisputed that Appellants used their mark on handbags — the same category of goods on which Burberry used its marks. The district court was therefore correct to afford the jury the opportunity to view the government’s evidence[9] and form an independent conclusion regarding whether Appellants’ plaid design was substantially indistinguishable from the Burberry Check mark and whether the inclusion of the equestrian knight figure made any difference. See United States v. Yi, 460 F.3d 623, 629 n. 4 (5th Cir.2006)(holding that it was for the jury to determine whether a battery that used the signature “Duracell” copper top and black body was a counterfeit, even though the text on the counterfeit battery read “Dinacell”). And this evidence was sufficient to support the jury’s finding that Appellants “used a counterfeit mark on or in connection with [intentionally trafficking in] goods and services.” See Habegger, 370 F.3d at 444.
2.
Appellants next argue that the evidence presented at trial was insufficient to allow a reasonable jury to determine that they had knowledge that the mark displayed on their goods was a counterfeit, as required by § 2320(a). Appellants failed to raise this argument in their Rule 29(c) motion, however, precluding the district court from having the first opportunity to opine on it. When a defendant raises specific grounds in a Rule 29 motion, grounds that are not specifically raised are waived on appeal. See United States v. Stewart, 129 Fed.Appx. 758, 766 (4th Cir.2005) (per curiam) (unpublished). Although we have not previously recognized this rule in a published opinion, we join the majority of our sister circuits by stating and adhering to it here. See, e.g., United States v. Goode, 483 F.3d 676, 681 (10th Cir.2007); United States v. Moore, 363 F.3d 631, 638 (7th Cir.2004), vacated on other grounds, 543 U.S. 1100, 125 S.Ct. 1019, 160 L.Ed.2d 1001 (2005); United States v. Herrera, 313 F.3d 882, 884-85 (5th Cir.2002); United States v. Quintana-Torres, 235 F.3d 1197, 1199 (9th Cir.2000); United States v. Belardo-Quinones, 71 F.3d 941, 945 (1st Cir.1995); United States v. Dandy, 998 F.2d 1344, 1356-57 (6th Cir.1993); United States v. Rivera, 388 F.2d 545, 548 (2d Cir.1968); see also Charles Alan Wright and Peter J. Henning, 2A Federal Practice & Procedure § 469 (4th ed. 2011). We therefore decline to consider Appellants’ argument for the first time on appeal.[10]
*201 B.
Appellants next contend that the district court erred when, in response to the jury’s question, it instructed the jury to decide for itself whether to consider the knight in determining whether Appellants’ mark was a counterfeit. Appellants concede that they did not object to this statement at trial. We therefore review the district court’s instruction for plain error. United States v. Wilson, 484 F.3d 267, 279 (4th Cir.2007).
“Under plain error review, Appellants must show that (1) the district court committed error, (2) the error was plain, and (3) the error affected their substantial rights.” Id. “An error is ‘plain’ when it is ‘obvious or clear under current law.’ ” United States v. Brack, 651 F.3d 388, 392 (4th Cir.2011) (quoting United States v. Knight, 606 F.3d 171, 177 (4th Cir.2010)). Even if Appellants make such a showing, “[t]he decision to correct the error lies within our discretion, and we exercise that discretion only if the error ‘seriously affects the fairness, integrity or public reputation of judicial proceedings.’ ” Knight, 606 F.3d at 177-78 (quoting United States v. Massenburg, 564 F.3d 337, 343 (4th Cir.2009)).
Here, Appellants have not met the high standard required to convince us to exercise our discretion. Their only contention as to why the district court’s instruction was error is that, as a matter of law, the jury was required to consider the presence of the knight in addition to the plaid pattern when comparing Appellants’ goods to those bearing the legitimate Burberry mark. Appellants point to no case law, and we have found none, that supports this proposition. They therefore provide us with no basis on which we could conclude that the district court erred. Even if the district court’s instruction was erroneous, however, we cannot say the error was plain unless Appellants establish it was “obvious or clear under current law.” See Brack, 651 F.3d at 392. Appellants have not met that standard here. Therefore, we decline to afford them relief under plain error review.
C.
Appellants next contend that § 2320 is unconstitutionally vague. Specifically, they assert that the statute’s definition of a “counterfeit mark” as “a spurious mark ... that is identical with, or substantially indistinguishable from” a mark registered on the principal register in the [USPTO]” does not clearly explain how similar a mark must be for it to be considered counterfeit. Thus, Appellants contend, the statute encourages arbitrary enforcement. “We review challenges to the constitutionality of a statute ... de novo.” United States v. Hsu, 364 F.3d 192, 196 (4th Cir.2004).
For a criminal statute to comply with due process, it must “ ‘provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal.’” Id. (quoting Buckley v. Valeo, 424 U.S. 1, 77, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam)). This entails “defin[ing] the criminal offense (1) with sufficient definiteness that ordinary people can *202 understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement.” Skilling v. United States, — U.S. -, 130 S.Ct. 2896, 2927, 177 L.Ed.2d 619 (2010) (quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). The fact that Congress might have written a statute more clearly does not make that statute unconstitutionally vague. United States v. Powell, 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). Moreover, “where ... a criminal statute regulates economic activity, it generally is subject to a less strict vagueness test.” Hsu, 364 F.3d at 196 (quoting United States v. Sun, 278 F.3d 302, 309 (4th Cir.2002)).
We believe that § 2320 is sufficiently clear to allow an ordinary person to understand what conduct it punishes. Appellants take particular issue with the statute’s use of the phrase “substantially indistinguishable” in the definition of a counterfeit mark. We find, however, that considered in its proper context, the meaning of this term is plain. See Kennedy v. St. Joseph’s Ministries, Inc., 657 F.3d 189, 191 (4th Cir.2011) (“[W]e must consider the context in which ... statutory words are used because ‘[w]e do not ... construe statutory phrases in isolation; we read statutes as a whole.’ ” (quoting Ayes v. U.S. Dep’t of Veterans Affairs, 473 F.3d 104, 108 (4th Cir.2006))). For a person’s use of a certain mark to be punishable as trafficking in counterfeit goods, the mark must be “spurious,” and it must be “identical with, or substantially indistinguishable from” a registered trademark. 18 U.S.C. § 2320(e)(1)(A). Black’s Law Dictionary defines “spurious” as “[d]eceptively suggesting an erroneous origin; fake.” Black’s Law Dictionary 1533 (9th ed. 2009). In ordinary usage, “substantial” means “[considerable in importance, value, degree, amount, or extent.” American Heritage Dictionary 1727 (4th ed. 2006). “Indistinguishable” means “[impossible to differentiate or tell apart.” Id. at 893. Therefore, the statute, by its plain terms, makes clear that a mark punishable as a counterfeit is one that suggests an erroneous origin and is, to a considerable degree, impossible to distinguish from a legitimate mark. The proximity of the phrase “substantially indistinguishable” to the term “identical” further emphasizes the degree to which a spurious mark must resemble a legitimate mark for it to be considered a counterfeit. Given the unambiguous nature of the statute’s plain language, we conclude that it easily allows an ordinary person to understand what the statute prohibits.
Supporting our conclusion is the fact that the only other circuits to have considered vagueness challenges to § 2320 have similarly rejected such arguments. See United States v. McEvoy, 820 F.2d 1170, 1172-73 (11th Cir.1987) (holding that § 2320, as a whole, is not unconstitutionally vague); see also United States v. Bohai Trading Co., 45 F.3d 577, 580 (1st Cir.1995) (determining that the phrase “at the time of the manufacture or production,” as used in the authorized-use exception to § 2320, is not unconstitutionally vague); United States v. Gantos, 817 F.2d 41, 44 (8th Cir.1987) (‘We have considered Gantos’ argumentf] that § 2320 is unconstitutional ... and find [it] to be without merit.”). We find the Eleventh Circuit’s observation with regard to this challenge particularly apt:
The plain meaning of [§ 2320] cannot be seriously disputed. The statute prohibits trafficking in goods where one knowingly uses a counterfeit mark in connection with those goods. A counterfeit is defined as a spurious mark which is used in trafficking, is identical with or substantially indistinguishable from a *203 registered trademark, and is likely to cause confusion, mistake or deception. The act has been applied numerous times in a consistent manner and without any court ever intimating that the act might be unconstitutionally vague.
McEvoy, 820 F.2d at 1172-73 (citations omitted). Thus, Appellants’ challenge to the constitutionality of the statute fails.[11]
D.
Finally, Appellants contend that the district court erred by denying their motion for a new trial pursuant to Rule 33. They claim, as they did before the district court, that a retrial is necessitated by the government’s allegedly improper comments at trial. Specifically, Appellants argue that prosecutors, at several points during the trial, misstated the perspective the jury should use when determining whether the mark displayed on their goods was a counterfeit, implying that the jury should consider a hypothetical “average person on the street” rather than using its own judgment. These misstatements, Appellants contend, were so prejudicial that they deprived them of a fair trial.[12]
Rule 33 allows a district court to “[u]pon the defendant’s motion, ... vacate any judgment and grant a new trial if the interest of justice so requires.” Fed. R.Crim.P. 33(a). Here, the district court agreed that prosecutors had misstated the law and found that such comments were prejudicial. It nevertheless denied Appellants’ Rule 33 motion, however, finding that any prejudice was cured by the district court’s correct statement of the law and its instructions to the jury to apply the law as stated by the court, not the attorneys. “We review for abuse of discretion a district court’s denial of a motion for a new trial.” United States v. Perry, 335 F.3d 316, 320 (4th Cir.2003). “A court ‘should exercise its discretion to grant a new trial sparingly,’ and ... it should do so ‘only when the evidence weighs heavily against the verdict.’ ” Id. (quoting United States v. Wilson, 118 F.3d 228, 237 (4th Cir.1997)).
A prosecutor’s statements at trial constitute reversible error only if they were (1) improper and (2) “prejudicially affected the defendant’s substantial rights so as to deprive the defendant of a fair trial.” United States v. Chorman, 910 F.2d 102, 113 (4th Cir.1990). A number of factors are relevant to the question of whether a defendant’s “substantial rights were prejudiced to the point of denying him a fair trial.” Lighty, 616 F.3d at 361. These factors are:
(1) the degree to which the prosecutor’s remarks ha[d] a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. We also consider (5) whether the prosecutor’s remarks were invited by improper *204 conduct of defense counsel, and (6) whether curative instructions were given to the jury.
Id. (citations omitted). These factors should be “examined in the context of the entire trial, and no one factor is dispositive.” Id.
In light of the district court’s comprehensive analysis and the deferential standard of review, we focus on the presence of curative instructions, which formed the basis of the district court’s decision.[13] Assuming without deciding that the government’s comments were improper and prejudicial, we find that the district court did not abuse its discretion by concluding that its curative instructions were sufficient to ensure Appellants were afforded a fair trial. As the district court noted, “juries are presumed to follow their instructions.” Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); see also United States v. Francisco, 35 F.3d 116, 119 (4th Cir.1994). At trial, the district court instructed the jury twice — including immediately following the government’s allegedly improper closing argument — that it was required to apply the law as the district court described it, not as the lawyers stated it. It also provided the jury with lengthy instructions regarding the perspective it was to use when determining whether the plaid used on Appellants’ goods was a counterfeit of the Burberry Check mark. It emphasized that the determination was to be based on a “side-by-side comparison [and] use of [their] own eyes.” J.A. 1587. It also stated that if the jury “decide[d] the mark [was] not identical or substantially indistinguishable,” it must find in favor of Appellants. Id. We do not believe it was an abuse of discretion for the district court to presume the jury followed these detailed instructions — a presumption our precedent requires.
Appellants advance no credible arguments to rebut the presumption that the jury followed its instructions here. They cite to no relevant case law in support of their conclusory assertion that “the presence of a curative instruction in a case like this one, with so many improper remarks made by the government, is rarely sufficient to cure their prejudicial effect.” Appellants’ Br. 52. They also claim that the fact that the jury asked a question during deliberations demonstrates that it did not understand the instructions, but they likewise provide no support for this assertion. As such, we conclude that it was well within the district court’s discretion to deny Appellants’ request for a new trial, particularly given the heightened showing we require of defendants before we will grant the drastic relief of affording them a new trial.
With all due respect to our dissenting colleague, we believe the standard of review — and the fact that the decision to grant a new trial is itself highly discretionary — requires this conclusion. We first note that the dissent spends the majority of its 16 pages focused on advancing two *205 assertions that we have assumed, for the sake of argument, are true: that the prosecution’s remarks were improper and that they prejudiced Appellants. Because we assume the validity of both of these conclusions, we take no issue with this portion of the dissent.
In its final three pages, the dissent expresses the view that the district court’s instructions to the jury were insufficient to cure the prejudice caused by the government’s comments.[14] It also takes issue with the district court’s statement that the jury could consider “other evidence that came into the record” in determining whether the two marks were substantially indistinguishable — in addition to a “side by side comparison” and their “own eyes.” J.A. 1587. It further opines that the district court should have explicitly instructed the jury regarding the limited effect of certain testimony. The question before us, however, is not whether we would have instructed the jury differently — as the dissent no doubt would have — because our review is not de novo. Rather, we consider whether the district court abused its discretion. Our review of the record indicates that the district court undertook a thoughtful and comprehensive review of the remarks made by the prosecution, the effect of those comments, and its responses to those comments — which included two instructions to follow the law as stated by the court, and not the lawyers, and specific instructions to the jury to determine whether the marks were substantially indistinguishable by performing a “side by side comparison,” by using their “own eyes,” and to make the decision on their own. J.A. 1587. Unlike the district court, we do not have the benefit of having witnessed the government’s remarks, the jury’s reaction to those remarks, or the jury’s understanding of the instructions. We therefore decline to hold that the district court’s conclusion that its curative instructions had their intended effect and that a new trial was not required in the interest of justice constituted an abuse of discretion.
III.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

.Specifically, the parties stipulated that Lam was president and Chan was manager of Global Import, Inc. and Marco Leather Goods, Ltd.; that Lam was an officer of The Perfect Impressions, Inc.; that Chan was president and Lam was vice president of Marco USA, Inc. and C & L Development, LLC; that Lam was president and Chan was treasurer of LY USA, Inc.; that Lam was president and Chan was secretary of CP USA, Inc.; that Chan was president of Best Handbags, Inc.; and that Lam was president and Chan was manager of Golden Horse USA Corporation.

. The parties further stipulated that Lam was an officer of Hong Kong Chung NGEI Investment, Ltd. and Chinese Prosperous International Ltd.; that Lam was chairman and president of Chinese Prosperous Group; and that Lam was the general manager of Longhai Zhong Yi Luggage and Bags, Ltd. and Chinese Prosperous Development, Ltd.

. CBP’s initial conclusion that the trademarks at issue here were counterfeit is not determinative with regard to Appellants' liability under 18 U.S.C. § 2320(a) or any other federal criminal statute implicated in this case. The district court accordingly instructed the jury that, regardless of CBP’s opinion on the mat *194 ter, the jury bore the ultimate responsibility for determining whether a mark used by Appellants met the definition of "counterfeit” included in § 2320(e)(1).

. CBP also seized goods displaying what it considered to be counterfeits of trademarks registered to Gucci. The jury acquitted Appellants of counterfeiting Gucci trademarks, however. We therefore discuss only the seized goods bearing the counterfeit Burberry Check mark.

. Eric Yuen, an employee of Appellants, was also charged in the indictment. The jury acquitted Yuen on all counts.

. The jury did not find the knight displayed on these goods to be a counterfeit of the Burberry Equestrian mark. Trial testimony indicates that it differed from the Burberry Equestrian mark in several respects.

. We note that Appellants spend much of their brief contending that the "antidissection rule” required the jury to, as a matter of law, consider their mark as a whole, rather than look at the plaid component of the pattern alone. The antidissection rule instructs that "[cjonflicting composite marks are to be compared by looking at them as a whole, rather than breaking the marks into their component parts for comparison.” J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 23.41 (4th ed. 2011). A composite mark is one that contains some matter that is descriptive in nature — and, thus, would not alone be registerable as a trademark — used in conjunction with nondescriptive matter. See Estate of P.D. Beckwith, Inc. v. Comm’r of Patents, 252 U.S. 538, 541, 40 S.Ct. 414, 64 L.Ed. 705 (1920) (defining "composite marks” as those which "contain both register-able and nonregisterable matter”). It is unclear whether this rule applies to the Burberry Check mark, as it is not a composite. Moreover, Appellants do not cite to — nor have we found — any Supreme Court or Fourth Circuit case that invokes the rule.
*199 Even if the antidissection rule does apply here, however, it would only have bearing on whether the evidence was sufficient to support a conviction if we were to accept Appellants’ argument that, viewing their mark as a whole, no reasonable jury could find it was a counterfeit of the Burberry Check mark because of the presence of the equestrian knight. As we explain in this section, we reject this contention. Appellants' mark is similar enough to the Burberry Check mark such that whether it was a counterfeit was a factual issue for the jury to decide. The jury had the opportunity to view both the Burberry Check mark and Appellants' mark in their entirety, and it determined that Appellants’ mark was a counterfeit, as it was entitled to do as the finder of fact. Therefore, we find Appellants’ argument regarding the antidissection rule lacking in merit.

. The Lanham Act defines “counterfeit” as “a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.” 15 U.S.C. § 1127. Because of the similarity between this definition and the § 2320 definition of "counterfeit mark,” we find Lanham Act civil counterfeiting cases helpful to our analysis of criminal counterfeiting cases brought under § 2320(a). We recognize that the standard may "be construed more narrowly in a criminal context than in a civil context.” Guerra, 293 F.3d at 1288. But see 130 Cong. Rec. 31,675 (stating that the criminal and civil standards are "identical in substance”). Even assuming that the criminal standard is somewhat higher, however, the evidence presented here was sufficient to allow the jury to find the Appellants’ mark was a counterfeit.

. As noted above, the government introduced numerous examples of the goods seized at Norfolk bearing the allegedly counterfeit mark. It also introduced examples of handbags displaying the legitimate Burberry Check mark, as well as — of particular significance here — handbags displaying the Burberry Check mark and the Burberry Equestrian mark used in combination.

. To the extent that an exception to this rule exists in situations in which a "manifest mis *201 carriage of justice” has occurred, see Quintana-Torres, 235 F.3d at 1199, this is not such a case. The government presented ample evidence at trial to allow a reasonable jury to conclude that Appellants were aware that the marks on their handbags and wallets were counterfeit, including evidence of: their use of multiple shell companies and multiple ports to import the counterfeit goods, the manner in which they transported and concealed the counterfeit merchandise, the civil lawsuit Burberry instituted against them, and the multiple seizure notices they received from CBP between 2002 and 2005.

. Although our finding that Appellants fail to meet the first prong of the unconstitutional vagueness test obviates our reaching the second prong, we note that it is disingenuous, in light of the record before us, for Appellants to claim their prosecution was "arbitrary’' and the "result of [a] relentless campaign of intimidation by Louis Vuitton, Burberry, and others.” Appellants' Br. 37, 39.

. Appellants also argue, for the first time on appeal, that the government’s statement during closing argument that "a composite mark ... has nothing to do with this case” was likewise improper. J.A. 1433. They contend that they should be granted a new trial on the basis of this comment. We have considered this argument and find that it lacks merit.

. We note that, as described above, the district court considered the applicable standard with commendable care, making detailed findings regarding each of the six Lighty factors. Specifically, it found that the government’s remarks were misleading and extensive, and that Appellants did nothing to invite the comments. It also found, however, that the comments were not deliberately made to divert the jury’s attention and that the govern-merit's evidence, absent the allegedly improper remarks, was strong enough to support Appellants' convictions. The district court finally considered the effect of its curative instructions, concluding they were sufficient to undo any prejudice Appellants may have suffered as a result of the government’s comments. Our focus is on this final finding because the district court treated it as determinative.

. In so stating, the dissent cites to United States v. Wilson, 135 F.3d 291 (4th Cir.1998), for the proposition that a "general curative instruction was insufficient to cause the jury to disregard the prosecutor’s improper statement.” Post at 213. In Wilson, the prosecution asserted during closing argument that the defendant had committed a murder that was not part of the indicted conduct. 135 F.3d at 297-99. This assertion was not supported by the evidence presented at trial “or any reasonable inference that could be drawn from it” and "came as a last-minute surprise” to the defense. Id. In response, the district court did not offer a specific curative instruction, but only "reminded the jury that the defendants were not on trial for charges not alleged in the indictment” — a short time after overruling defense counsel's repeated objections to the murder argument. Id. at 302. In these circumstances, we found the “general instruction ... insufficient.” Id.
In contrast, the district court here sustained Appellants' objections to the prosecution’s improper statements of the law, instructed the jury immediately after the government's closing argument to follow the court’s, not the lawyers', instructions regarding what the law required, and subsequently provided detailed instructions regarding how the jury was to apply the law. As such, we do not believe the situation in this case is comparable to that we confronted in Wilson. The dissent draws our attention to no other cases that support its assertion that we should find that the curative instruction here failed to cure the prejudice created by the prosecutor’s comments.