**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-4602

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HATEM ABU HASSAN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Malcolm J. Howard, Senior District Judge. (5:06-cr-00007-H)

Argued: May 13, 2008                    Decided: June 6, 2008

Before KING, Circuit Judge, HAMILTON, Senior Circuit Judge, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Stephen Clayton Gordon, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Jennifer P. May-Parker, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Hatem Abu Hassan appeals his convictions for trafficking in goods bearing a counterfeit mark, and aiding and abetting the same, 18 U.S.C. §§ 2320(a) and 2.  We affirm.

I

In the summer of 2004, the Wilson Police Department began to investigate whether some of the convenience store owners in the Wilson, North Carolina area were trafficking in stolen goods. Hassan, who owned a convenience store in Wilson, was approached by undercover officers on July 8, 2004 to see if he was interested in purchasing purportedly stolen cigars.  During his first meeting with the undercover officers, Hassan purchased ten boxes of Cigarillo cigars for $100.  Later that day, the undercover officers returned to Hassan's convenience store and inquired whether he was interested in purchasing purportedly stolen baby formula.  Hassan told the officers that he had a friend who would purchase all of the baby formula that the undercover officers could provide. Thereafter, on numerous occasions, Hassan purchased purportedly stolen baby formula from the undercover officers.  All of the purportedly stolen goods sold to Hassan were contained in their original factory packaging.

Sometime in July 2004, the undercover officers learned that Hassan was selling pills bearing trademarks registered to the drug

manufacturer Pfizer, Inc. The use of the Pfizer trademarks on the pills made the pills appear to be genuine Viagra pills. During a baby formula transaction on July 19, 2004, one of the undercover officers, Detective Alfred Drayton, asked Hassan to give him a Viagra pill. In response, Hassan retrieved a pill from his cash register and gave it to Detective Drayton as a free sample, adding that "it truly works." (J.A. 102).

On September 23, 2004, while delivering 500 cases of baby formula to Hassan, Detective Drayton asked Hassan to sell him some Viagra pills. Detective Drayton told Hassan that he had $1,000 to spend on Viagra pills, and Hassan sold Detective Drayton 200 pills for $1,000. On four other occasions, between October 2004 and January 2005, Detective Drayton purchased pills from Hassan. All told, Detective Drayton purchased approximately 1200 pills from Hassan.

At trial, a chemist testified that Viagra is a patented drug made by Pfizer and that genuine Viagra requires a doctor's prescription before it can be dispensed. The chemist also testified that the pills Hassan sold to Detective Drayton were not genuine Viagra pills. According to the chemist, the color of the pills sold by Hassan was slightly different from that of a genuine Viagra pill. Moreover, although the pills sold by Hassan contained the same active ingredient as a genuine Viagra pill and had similar markings as those of a genuine Viagra pill, they also contained

fillers not found in a genuine Viagra pill.  The government also introduced evidence showing that Hassan did not dispense the counterfeit Viagra pills from a bottle typically used for genuine Viagra pills.  Rather, he typically retrieved the pills from an Aleve bottle, a Tylenol box, or a ziplock bag.

Following his arrest in February 2005, Hassan's vehicle was searched.  Nine counterfeit Viagra pills, similar to the ones sold to Detective Drayton, were recovered during the search.  In a post-arrest statement, Hassan stated that he obtained the pills from a friend in Rocky Mount, North Carolina.

On January 11, 2006, Hassan was charged by a federal grand jury in the Eastern District of North Carolina with one count of conspiracy to transport stolen property (baby formula) in interstate commerce, 18 U.S.C. §§ 2314 and 371, five counts of transporting stolen property (baby formula) in interstate commerce, and aiding and abetting the same, id. §§ 2314 and 2, and five counts of trafficking in goods bearing a counterfeit mark, and aiding and abetting the same, id. §§ 2320(a) and 2.  At trial, the district court dismissed one of the § 2314 counts because the government failed to meet the interstate commerce element.  At the conclusion of the trial, the jury convicted Hassan of the remaining counts.

The district court sentenced Hassan to 37 months' imprisonment, concurrent on each count.  Hassan filed a timely

notice of appeal.  On appeal, he challenges the sufficiency of the evidence to support his convictions on the § 2320(a) counts.

II

We review de novo the district courts decision to deny a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  United States v. Osborne, 514 F.3d 377, 385 (4th Cir. 2008).  Where, as here, the motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."  Glasser v. United States, 315 U.S. 60, 80 (1942); Osborne, 514 F.3d at 385.  Substantial evidence is evidence "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).  We consider circumstantial and direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established.  Id. at 858.

In resolving issues of substantial evidence, we do not weigh evidence or review witness credibility.  United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).  Rather, it is the role of the jury to judge the credibility of witnesses, resolve conflicts in

testimony, and weigh the evidence. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984).

Section 2320(a) prohibits "intentionally traffic[king] or attempt[ing] to traffic in goods or services and knowingly us[ing] a counterfeit mark on or in connection with such goods or services." In order to prove a violation of § 2320(a), the government must prove, beyond a reasonable doubt, that the defendant "(1) trafficked or attempted to traffic in goods or services; (2) did so intentionally; (3) used a counterfeit mark on or in connection with such goods and services; and (4) knew the mark was counterfeit." United States v. Habegger, 370 F.3d 441, 444 (4th Cir. 2004). "A defendant is guilty of aiding and abetting if he has knowingly associated himself with and participated in the criminal venture." Burgos, 94 F.3d at 873 (citation and internal quotation marks omitted).

Hassan contends that the record does not contain substantial evidence demonstrating that he knew the pills he sold to Detective Drayton were counterfeit Viagra pills. We disagree. Several pieces of evidence, when viewed collectively, demonstrate that Hassan knew the pills were counterfeit Viagra pills.

The first, and strongest, piece of evidence tending to show that Hassan knew the pills he sold to Detective Drayton were counterfeit Viagra pills is Hassan's assurance to Detective Drayton on July 19, 2004 that the pill he was providing was effective. If

Hassan knew the pill he was giving to Detective Drayton was a genuine Viagra pill, there would be no need for him to vouch for the pill's effectiveness. However, because the pills were counterfeit, Hassan needed to convince Detective Drayton that the unauthentic pill would work as effectively as a genuine Viagra pill.

The next piece of evidence tending to prove Hassan's knowledge is Hassan's provision of a free sample to Detective Drayton. If Hassan was dispensing a genuine Viagra pill, there would be no need to provide a sample, as Hassan could depend on the medical evidence available touting a genuine Viagra pill's effectiveness. Moreover, by providing a free sample, Hassan was encouraging Detective Drayton to confirm that the counterfeit Viagra pill was as effective as a genuine Viagra pill.

The context of the transactions between Hassan and Detective Drayton also supports the conclusion that Hassan knew the pills he was selling were not genuine Viagra pills. First, in his post-arrest statement, Hassan stated that he was getting the pills from his friend in Rocky Mount, North Carolina. Because Hassan did not get the pills from a legitimate prescription source, the jury was at liberty to conclude that it was more likely that the pills were not manufactured by Pfizer. Second, when Hassan sought to purchase purportedly stolen goods from the undercover officers, he saw no need to confirm the authenticity of the goods the undercover

officers were trying to sell. However, when Hassan filled the role of seller, he was acutely aware of the need to convince Detective Drayton that the pill he was providing was as effective as a genuine Viagra pill. To that end, Hassan provided Detective Drayton a free sample, in hopes that Detective Drayton would seek to buy large quantities of the pills he had to sell.

The packaging of the pills Hassan was selling and their abundant supply also suggest that Hassan knew the pills he was selling to Detective Drayton were not being manufactured by Pfizer. If the pills Hassan was selling were manufactured by Pfizer, one would expect that the pills would be stored in some type of packaging indicative of their genuine source. They were not. Moreover, if the pills Hassan was selling were manufactured by Pfizer, but obtained illegally, one would expect shortages or delays, as the supply would depend on the pills being stolen from either Pfizer or a legitimate distributer of prescription medications. No such shortages or delays were present.

In sum, it was for the jury, not this court, to decide which version of the events--the government's or Hassan's--was more credible. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Here, based on the evidence summarized above, the jury was entitled to conclude that Hassan knew the pills he sold to Detective Drayton were counterfeit Viagra pills.

III

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>