**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———

**No. 13-4252**

———

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

AWNI SHAUAIB ZAYYAD,

              Defendant - Appellant.

———

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:10-cr-00243-RJC-DCK-1)

———

Argued: December 11, 2013            Decided: January 24, 2014

———

Before AGEE, DIAZ, and FLOYD, Circuit Judges.

———

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Diaz and Judge Floyd concurred.

———

**ARGUED**: Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. David M. Lieberman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: Henderson Hill, Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Mythili Raman, Acting Assistant Attorney General, Denis J. McInerney, Acting Deputy Assistant Attorney General, Criminal Division, Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Anne M.

Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

AGEE, Circuit Judge:

Awni Shauaib Zayyad was convicted of five felony counts relating to the sale of counterfeit prescription drugs. On appeal, Zayyad raises two assignments of error. First, he contends that the district court erred in denying his attempts to introduce certain evidence about a "gray market"[1] for prescription pills. Second, Zayyad argues that the Government never established that he knew that the pills that he sold were counterfeit.

We affirm the judgment of the district court, as neither of Zayyad's arguments have merit. The district court appropriately limited Zayyad's gray-market evidence, and the Government offered sufficient evidence of his knowledge that he sold counterfeit pills.

I.

A.

Essam Elasmar ran a counterfeit drug operation through his convenience store in Charlotte, North Carolina, where he peddled erectile-dysfunction drugs that looked like Viagra and Cialis.

---

[1] "The term 'gray market good' refers to a good that is 'imported outside the distribution channels that have been contractually negotiated by the intellectual property owner.' Such goods are also commonly called 'parallel imports.'" Kirtsaeng v. John Wiley & Sons, Inc., 133 S. Ct. 1351, 1379 n.9 (2013) (internal citation omitted).

Unfortunately for Elasmar, his illicit drug business ended when he sold an undercover Department of Homeland Security ("DHS") agent three bulk counterfeit drug orders. After a search following the drug buys found several hundred pills, Elasmar agreed to cooperate with investigators.

Elasmar turned over his supplier's telephone number, which DHS traced to Zayyad. Then, at the authorities' behest, Elasmar twice ordered drugs from Zayyad. In the first buy, Elasmar bought 500 Viagra pills for $4 a pill, a price well below wholesale. About a month later, DHS had Elasmar place a second order -- this time for both Viagra and Cialis -- for 700 pills at $4 a pill.

When Zayyad delivered the second batch of pills to Elasmar, police detained him and discovered more than 800 pills in the glove box and sunglasses holder of Zayyad's van. One set of pills was concealed in a brown paper bag, while another set was wrapped in a blue paper towel; all were in plastic bags. The pills had the outward appearance of a genuine Viagra or Cialis pill, but they lacked any prescriptions, prescription bottles, product literature, lot numbers, or invoices. Zayyad admitted to law enforcement that he had planned to resell hundreds of the pills to someone in Charlotte, but refused to identify who supplied them to him in the first place.

4

Police visited Zayyad's house on the same day as the traffic stop. When a woman answered the door, agents asked for permission to search the home. The woman consented, but only after she closed the door, stayed inside for ten minutes, and came back wearing a damp shirt. Perhaps alerted by the woman's wet clothing, agents searched a bathroom near the front of the house, finding a yellowish pill on the rim of a toilet equipped with an "industrial strength flushing system." (J.A. 759.)

As noted, some of the pills seized from Zayyad's van and home looked similar to genuine Viagra and Cialis pills, with the same shapes, colors, and imprints as genuine pills. But other pills did not have the right color tone, shape, or embossing. Notwithstanding outward appearances, chemical analyses showed that the pills contained incorrect compositions and active-ingredient levels; many of the counterfeit Cialis pills also incorrectly contained the active ingredient of Viagra. At trial, specialists from the Food and Drug Administration, Pfizer, and Eli Lilly testified that all the pills that they sampled were counterfeit.

B.

A grand jury in the Western District of North Carolina initially indicted Zayyad on seven counts: one count of conspiracy to traffic in and dispense counterfeit drug products,

5

three counts of trafficking in counterfeit goods, and three counts of selling and dispensing counterfeit prescription drugs.

At Zayyad's trial in December 2011, the Government relied principally on the nature of the transactions -- unpackaged pills from an illegitimate source -- to show that Zayyad knew that the pills that he sold were fake. For his part, Zayyad tried to suggest through cross-examination that he believed the pills came from the gray market. In particular, Zayyad cross-examined Government witnesses from Pfizer, Eli Lilly, and DHS who conceded that Pfizer and Eli Lilly manufactured and sold Viagra and Cialis abroad at cheaper prices. They also admitted that persons sometimes import foreign-manufactured pills into the United States. In addition, evidence at the first trial showed that Zayyad told Elasmar that the pills were real; no evidence indicated that Zayyad had ever said the pills were fake.

After the jury began deliberating, it asked the district court whether "knowing [that the pills] were 'counterfeit' [was] a requirement of the charge of violation in Counts Two through Seven." (J.A. 532.) The court reiterated that the offenses did include a knowledge element. The jury then deliberated further before announcing that it had deadlocked. A modified Allen[2]

---

[2] Allen v. United States, 164 U.S. 492 (1896).

charge failed to break the deadlock, and the district court declared a mistrial.

## C.

After the mistrial, the grand jury issued a superseding indictment that narrowed the conspiracy count's scope and eliminated two counts. The new indictment contained a conspiracy count, two counts of trafficking in counterfeit goods, and two counts of selling and dispensing prescription drugs.

Before the second trial, the Government moved to preclude Zayyad from "attempting to raise during the Government's case-in-chief, through cross-examination or otherwise, any evidence or argument regarding an alleged 'diversion market' or 'grey market' for genuine, non-counterfeit, prescription medications[.]" (J.A. 565.) The Government represented to the district court that the gray-market evidence would only be relevant if, for instance, "the defendant were to testify during the defense case regarding his state of mind, that is, that he believed the Viagra and Cialis pills he sold were genuine pills from a specific 'diversion market' or 'grey market' channel[.]" (J.A. 570.)

Zayyad responded that he should be permitted to use "gray goods" evidence to establish an "affirmative defense," namely

7

"that the purported Viagra and Cialis [pills] at issue are 'gray goods[.]'" (J.A. 651.) Put differently, Zayyad wanted to use evidence establishing a gray market for prescription pills to argue that some of the pills that police seized from him could be genuine. He contended that "the vast majority of the more than 2,000 purported counterfeit Viagra and Cialis tablets at issue . . . ha[d] never been authenticated[.]" (J.A. 653.) And he argued that the Government's approach would impair his Sixth Amendment rights to confrontation and Fifth Amendment due process rights by forcing him to testify.

The district court granted the Government's motion in limine and determined the gray-market issue was not relevant under Federal Rule of Evidence 401, as "there [was] no evidence that shows that the defendant possessed any genuine pills." (J.A. 660.) In addition, the court excluded the evidence under Federal Rule of Evidence 403, concluding "that concerns about confusion of the issues, misleading the jury, and considerations of waste of time" would overwhelm the evidence's probative value. (J.A. 660.)

D.

At the second trial, the Government presented much the same basic evidence of Zayyad's knowledge as in the first trial: he sold the pills cheaply, kept them in plastic bags, and made them

8

available without a prescription. In response, defense counsel argued that Zayyad's "intent was to sell real Viagra and Cialis, and there's no evidence in this trial to the contrary." (J.A. 907.) Further, Zayyad maintained that "[i]t would take a forensic chemist, pharmacist, or some other person trained . . . to look at any pill and be able to know that it's counterfeit on sight." (J.A. 908.)

Upon closure of the evidence, Zayyad moved for a judgment of acquittal, which the district court denied. The jury then convicted Zayyad on all counts, and the district court sentenced him to 24 months in prison. Zayyad timely appeals, and we have jurisdiction under 28 U.S.C. § 1291.

II.

Zayyad first argues that the district court erred in precluding him from introducing evidence about a "gray market" or "diversion market" in Viagra and Cialis pills. That evidence, Zayyad contends, was relevant because it could have established that he reasonably believed that he dispensed real prescription drugs. He separately argues that the district court could not exclude the gray-market evidence under Rule of Evidence 403 because it substantiated a central part of his case.

9

We note at the outset that Zayyad frames his argument too broadly. The district court did not preclude Zayyad from introducing all evidence concerning a gray market. The Government's motion in limine only requested a limit on cross-examination, and the district court's order granted that motion in limine. At oral argument, counsel for Zayyad suggested that it would have been futile to try to introduce gray-market evidence during the defendant's case-in-chief given the court's ruling on the motion in limine. But Zayyad never tried to introduce any evidence during his case-in-chief, never raised the possibility of doing so, and never made any proffer regarding gray-market evidence to the district court. Therefore, we treat the district court's order as what it was: a limit on Zayyad's right to cross-examine and nothing more.

A.

Before considering the merits of Zayyad's claims, we first examine the appropriate standard of review.

Normally, "[w]e review for abuse of discretion a trial court's limitations on a defendant's cross-examination of a prosecution witness." United States v. Ramos-Cruz, 667 F.3d 487, 500 (4th Cir. 2012); see also United States v. Leeson, 453 F.3d 631, 636 (4th Cir. 2006) ("We review a district court's ruling on the admissibility of evidence for abuse of

10

discretion."). "A district court abuses its discretion by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 112 (4th Cir. 2013) (internal quotation marks omitted).

The initial question is whether this abuse-of-discretion standard applies -- because Zayyad preserved his present argument -- or whether the plain-error standard applies -- because he did not. See United States v. Jones, 716 F.3d 851, 855 (4th Cir. 2013) ("We generally limit our review of claims not properly preserved in the district court to plain error.").

To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal. Because he must "state[] the specific ground" upon which he objects below, Fed. R. Evid. 103(a), "an objection on one ground does not preserve objections on different grounds" on appeal, United States v. Massenburg, 564 F.3d 337, 342 n.2 (4th Cir. 2009). So, even if a defendant invokes the same rule in both instances, he may still waive his claim if he fashioned his argument differently. See, e.g., United States v. Pratt, 239 F.3d 640, 644 (4th Cir. 2001) (reviewing for plain error where defendant objected below to use of co-conspirator statements

11

under Federal Rule of Evidence 801(d)(2)(E) but pressed different aspect of the same rule on appeal).

We agree with the Government that Zayyad likely did not preserve his present argument below. Before the district court, Zayyad argued that gray-market evidence could raise doubts as to whether the pills were in fact counterfeit. Indeed, even after the district court ruled on the motion in limine regarding cross-examination, defense counsel stressed again that the gray-market evidence went to whether the pills were counterfeit. Zayyad never raised any argument that the gray-market evidence went to show his knowledge that the pills were gray-market items. Yet this argument is the claim that he makes on appeal and that it appears he did not preserve in the district court.

Nonetheless, we need not decide that issue. Even if we assume that Zayyad preserved the argument that he now makes, it fails under the abuse-of-discretion standard. See, e.g., United States v. Palacios, 677 F.3d 234, 245 n.6 (4th Cir. 2012) (assuming that defendant preserved evidentiary objections where arguments failed even under preserved error standard).

B.

District courts may "place limitations upon the cross-examination of . . . witnesses." United States v. Janati, 374 F.3d 263, 274 (4th Cir. 2004). They may impose these limits

12

"based on concerns including harassment, prejudice, confusion of the issues, repetition, or marginal relevance." United States v. Turner, 198 F.3d 425, 429 (4th Cir. 1999). They enjoy "wide latitude" in doing so. Id.

The district court did not allow Zayyad to cross-examine Government witnesses on the gray market in part because the court determined that such testimony would be irrelevant. "[A] defendant can only cross-examine a prosecution witness if the information sought to be elicited is relevant." United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009) (internal quotation marks and alterations omitted); see also Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). We deem evidence relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Although this "threshold for relevancy is relatively low," United States v. Powers, 59 F.3d 1460, 1465 (4th Cir. 1995), we rarely reverse relevancy decisions because they "are fundamentally a matter of trial management," United States v. Benkahla, 530 F.3d 300, 309 (4th Cir. 2008).

Zayyad contends that his gray-market cross-examination would have been relevant to his principal defense: that he did not know that he was peddling counterfeit pills. And indeed, both charged substantive offenses include a knowledge element.

13

"To obtain a conviction under [18 U.S.C.] § 2320(a) [for using a counterfeit mark], the [G]overnment was required to prove that [Zayyad] . . . knew the mark [on the pills] was counterfeit." United States v. Chong Lam, 677 F.3d 190, 197-98 (4th Cir. 2012). Likewise, because the felony offense of dispensing counterfeit drugs requires that the defendant act "with intent to defraud or mislead," 21 U.S.C. § 333(a)(2), the defendant must at least have knowledge that his drugs are mislabeled. See, e.g., United States v. Vitek Supply Corp., 144 F.3d 476, 486 (7th Cir. 1998) ("To act with this intent [to defraud or mislead], [defendants] must have had knowledge of the essential nature of the alleged fraud." (internal quotation marks omitted)).

But Zayyad's proposed cross-examination was irrelevant because it did not connect to the knowledge element of the charged offenses. "Unless there is a connection between the external facts and the defendant's state of mind, the evidence of the external facts is not relevant." United States v. Curtis, 782 F.2d 593, 599 (6th Cir. 1986). Zayyad never suggested -- through his own testimony, testimony from other witnesses, documentary evidence, proffer, or otherwise -- that he believed he was selling gray-market drugs. Nor did he establish his own awareness of the gray market.

14

We have previously recognized that a defendant cannot distract the jury by introducing evidence concerning a potential defense that he never raised. Relevance, after all, must "be determined in relation to the charges and claims being tried, rather than in the context of defenses which might have been raised but were not." United States v. Hedgepeth, 418 F.3d 411, 419 (4th Cir. 2005). If the defendant wants to present a theory or belief that might have justified his actions, then he must present evidence that he in fact relied on that theory or belief. See, e.g., United States v. Kokenis, 662 F.3d 919, 927 (7th Cir. 2011) ("[The defendant] offered no evidence that he actually relied on the pooling capital theory, so testimony about the theory would be irrelevant, confusing, and perhaps even misleading."); cf. Havee v. Belk, 775 F.2d 1209, 1225 (4th Cir. 1985) (holding that account summary could not be used to prove the knowledge of debtor and transferees, where record contained no evidence that debtor or transferees saw the summary). Otherwise, a defendant could introduce evidence that would invite the jury to speculate a non-existent defense into existence.

As the Government notes, we often see these principles applied in tax evasion cases. In one such case, we affirmed a district court's decision to limit cross-examination that purportedly went to the defendants' knowledge. See United

15

States v. Jinwright, 683 F.3d 471, 483 (4th Cir. 2012). The defendants there wanted to cross-examine lay witnesses concerning the witnesses' beliefs that certain payments were non-taxable "gifts." Id. But because the defendants did not establish that they relied on such a belief, we deemed the evidence irrelevant. Id.; accord United States v. Powell, 955 F.2d 1206, 1214 (9th Cir. 1992); United States v. Harris, 942 F.2d 1125, 1132 n.6 (7th Cir. 1991); see also United States v. Dynalectric Co., 859 F.2d 1559, 1574 n.19 (11th Cir. 1988) (upholding district court's exclusion of evidence of economic conditions as irrelevant in bid-related case, where defendants were not shown to have relied on those conditions in making bid). Just as in that case (and the many cases like it), the record before us contains no evidence of any actual reliance on Zayyad's part that would justify the use of the explanatory gray-market evidence. The district court did not err in barring cross-examination regarding that evidence, where there was no connection to the knowledge element and consequently no relevance.

## C.

Zayyad objects that forcing him to summon other evidence in support of his gray-market contention raises constitutional concerns. He insists that we should not force him to waive his

16

constitutional right not to testify before allowing him to present otherwise relevant evidence.

At bottom, Zayyad complains of the burdens of presenting his chosen defense. A defendant may struggle with how to attack an element that involves his own state of mind, particularly when he lacks contemporaneous evidence of that state of mind. But a defendant's rights "would not be violated simply because he had to choose between not testifying and laying [the required] foundation." Kokenis, 662 F.3d at 927. "Evidence by its nature builds pressure to rebut it -- that's what the adversary system is about. That the defendant faces a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." United States v. Kelly, 592 F.3d 586, 594 (4th Cir. 2010) (internal quotation marks and alterations omitted). Zayyad cannot use the privilege against self-incrimination as a means to free himself from the basic rules of relevancy.

D.

Even if we could deem this evidence relevant, we could not say that the district court committed reversible error by directing the evidence to Zayyad's case-in-chief. The court gave Zayyad the opportunity to present gray-market evidence

17

outside of cross-examination. But, for reasons known only to him, Zayyad chose to forego that course. Zayyad's "failure to do so rests squarely on [his] shoulders." Jinwright, 683 F.3d at 483; see also United States v. Stadtmauer, 620 F.3d 238, 272-73 (3d Cir. 2010) (explaining that district courts may direct the defendant to present relevant evidence outside cross-examination).

Moreover, the district court permitted Zayyad to cross-examine Government witnesses on other topics. For instance, Zayyad pointed out weaknesses in the witnesses' analyses, and he highlighted the difficulties in distinguishing between real and genuine pills. Because Zayyad could attack the Government's witnesses on other grounds and could raise his preferred argument in his own case, "the district court acted well within its discretion" to limit cross-examination on a particular theory. United States v. Smith, 44 F.3d 1259, 1269 (4th Cir. 1995) (affirming district court's decision to limit cross-examination on particular subject where defendant could raise evidence concerning the same subject in her case-in-chief and could cross-examine witness on other matters).

E.

The district court alternatively ruled that the gray-market cross-examination evidence should be excluded under Federal Rule

18

of Evidence 403. Under that rule, courts may exclude relevant evidence "if its probative value is substantially outweighed by a danger of," among other things, "confusing the issues, misleading the jury, . . . [or] wasting time." Fed. R. Evid. 403. "It is not an easy thing to overturn a Rule 403 ruling on appeal." United States v. Lentz, 524 F.3d 501, 525 (4th Cir. 2008) (internal quotation marks omitted). Certainly, the "balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." Id. (internal quotation marks omitted). But a district court's judgment concerning where that balance lies "will not be overturned except under the most extraordinary circumstances." Id. (internal quotation marks omitted).

In Zayyad's case, the district court correctly determined that the gray-market evidence would confuse, mislead, and waste time. The evidence would have distracted the jury from its principal purpose: assessing Zayyad's subjective belief and actual knowledge. Instead, it threatened to lead the jury into pure speculation based on no foundational evidence as to Zayyad's state of mind. Jurors might have been led to question whether a reasonable person could have known or believed that his pills came from the gray market. Yet, at least lacking any evidence from Zayyad that he believed that he was selling gray-market pills, the jury's inquiry would have been complete

guesswork.   The   trial   judge   appropriately   avoided   that possibility under its Rule 403 ruling.

For all the reasons noted above, the district court did not err in barring Zayyad's proposed cross-examination.

III.

In his second argument, Zayyad contends that the Government provided insufficient evidence to prove the knowledge element of the charged offenses.   Zayyad notes that he never confessed to knowing that the pills were fake, and no one recorded him admitting that the pills were counterfeit.   And in what Zayyad calls the most "on-point" direct evidence (Appellant's Br. 29) -- his statements upon arrest and his statements to Elasmar -- Zayyad indicated that he believed the pills were real.   In contrast, Zayyad says, all of the Government's circumstantial evidence was equally consistent with a seller who was selling pills purchased from the gray market.

A.

"We review de novo the district court's decision to deny a defendant's Rule 29 motion for judgment of acquittal."   United States v. Royal, 731 F.3d 333, 337 (4th Cir. 2013).   "[I]nsofar as [Zayyad] challenges the jury's finding that the [G]overnment adequately proved the relevant offense element, we review that

20

argument for sufficiency of the evidence." United States v. Day, 700 F.3d 713, 725 (4th Cir. 2012).

"On an appeal challenging the sufficiency of evidence, we assess the evidence in the light most favorable to the government, and the jury's verdict must stand unless we determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Royal, 731 F.3d at 337. Stated plainly, a sufficiency challenge presents a "heavy burden," which a defendant will only overcome in "cases where the prosecution's failure is clear." United States v. McLean, 715 F.3d 129, 137 (4th Cir. 2013) (internal quotation marks omitted).

B.

Viewed in the light most favorable to the Government, the evidence sufficiently established Zayyad's knowledge. The Government's circumstantial fact evidence allowed the jury to reasonably infer that the pills were counterfeit. The pills did not come with traditional packaging or materials, and came at a very low price, in enormous volumes, from sources that one would not normally expect to have legitimate pills. These facts would indicate that the pills were illegitimate. Zayyad also hid the pills in his van and evidently had help in destroying additional pill evidence at his home. The later attempt to conceal the

21

pills further indicates awareness that the pills were unlawful. See United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012) ("[A]n attempt to cover up the commission of a crime implies consciousness of guilt. Here, the jurors could reasonably infer consciousness of guilt (and, thus, intent) from the defendant's endeavor to conceal his possession of the [instrument of the crime.]" (internal citations omitted)). All these facts allowed the jury to infer knowledge of false pills on Zayyad's part. See, e.g., United States v. Hassan, 280 F. App'x 271, 274 (4th Cir. 2008) (unpublished) (holding that evidence supported counterfeit drug convictions where, among other things, (1) defendant admitted he obtained pills from an illegitimate source; (2) pills came in illegitimate packaging; and (3) pills came in abundant supply).

At the very least, a jury could have reasonably concluded that Zayyad willfully blinded himself to the reality that the pills were counterfeit. A jury may rely upon willful blindness "when the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance." United States v. Ruhe, 191 F.3d 376, 384 (4th Cir. 1999) (internal quotation marks omitted); cf. United States v. Poole, 640 F.3d 114, 122 (4th Cir. 2011) (explaining in tax context that "willful blindness" can satisfy scienter element "when the evidence supports an inference that [the] defendant was

22

subjectively aware of a high probability of the existence of . . . liability"). "[P]roof of actual knowledge is not necessary if the defendant was willfully blind." United States v. Wells, 163 F.3d 889, 898 (4th Cir. 1998). And evidence like that found here -- no documents for the drugs, strange packaging, discreet transactions, and prices well below wholesale -- all suggest that Zayyad was deliberately indifferent to the fact that his drugs were counterfeit. See, e.g., United States v. Ali, 735 F.3d 176, 188 (4th Cir. 2013) (listing lack of documentation, "unmarked packages," and "discreet handoffs" among facts supporting inference of willful blindness); United States v. Dais, No. 91-5820, 1992 WL 14595, at *2 (4th Cir. Jan. 31, 1992) (unpublished) (noting that low prices of goods should have suggested to defendant who purchased them that goods were illegal).

C.

Zayyad insists that the Government's evidence supports an innocent inference that he believed that he was trafficking in legitimate, gray-market goods. That's beside the point.

For one thing, Zayyad did not introduce evidence concerning gray-market goods at his second trial, and we can consider only

23

evidence from the second trial.[3] Zayyad asks us to judicially notice that a gray market exists, but we do not take judicial notice of a purported fact merely because a party tried to establish it at a prior trial. "Only indisputable facts," after all, "are susceptible to judicial notice." Nolte v. Capital One Fin. Corp., 390 F.3d 311, 317 n.* (4th Cir. 2004). Under Federal Rule of Evidence 201(b), facts are considered indisputable when they are "generally known within the trial court's territorial jurisdiction" or they "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." But "[f]acts adjudicated in a prior case," or in this instance, a prior trial in the same case, "do not meet either test of indisputability contained in Rule 201(b)[.]" Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

For another thing, it does not matter that the Government's evidence also supported innocent inferences. "[A]s a general proposition, circumstantial evidence may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008) (internal

---

[3] Our review of the record reveals no stipulation or similar agreement to incorporate any facts from the first trial into the second trial.

24

quotation marks and alterations omitted). "The jury was entitled to reject the theory consistent with innocence and accept the one consistent with guilt, so long as there was substantial evidence for its choice." United States v. Garcia, 868 F.2d 114, 116 (4th Cir. 1989).

Zayyad's "direct" evidence -- namely his own statements that the drugs were real -- does not matter either. Here again, Zayyad mentioned these statements at the first trial, but not the second. Even had the statements appeared at the second trial, we would not decide differently. "[C]ircumstantial evidence is not inherently less valuable or less probative than direct evidence[.]" United States v. Martin, 523 F.3d 281, 289 (4th Cir. 2008) (internal quotation marks omitted). The jury had every right to disregard "direct" evidence supporting Zayyad's theory in favor of the Government's equally weighty circumstantial facts supporting his guilt. In fact, the jury had a rational reason to do so: Zayyad's statements were untrustworthy because he had a motive to lie to both his buyer (to fetch a better price for his product) and the police (to escape weightier charges). See Hassan, 280 F. App'x at 274 (finding that jury could infer defendant's knowledge from defendant's insistence that the pills were effective to potential purchasers, as "there would be no need for him to vouch for the pill's effectiveness" had the pills been genuine).

25

Accordingly, Zayyad's challenge to the sufficiency of the evidence fails.  The district court did not err in denying his Rule 29 motion.

## IV.

For the reasons set forth above, the district court's judgment is

AFFIRMED.