**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

—————

**No. 21-4104**

—————

UNITED STATES OF AMERICA,

           Plaintiff – Appellee,

    v.

JACQUES YVES SEBASTIEN DUROSEAU,

           Defendant – Appellant.

—————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (4:20-cr-00003-D-1)

—————

Argued: December 7, 2021            Decided: February 24, 2022

—————

Before DIAZ and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

—————

Vacated and remanded by published opinion. Senior Judge Traxler wrote the opinion in which Judge Diaz and Judge Quattlebaum joined.

—————

**ARGUED:** Edward D. Gray, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Vijay Shanker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** G. Alan DuBois, Federal Public Defender, Jennifer C. Leisten, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Acting Deputy Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Norman Acker, III, Acting United States Attorney, David A.

Bragdon, Assistant United States Attorney, Chief, Appellate Division, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

TRAXLER, Senior Circuit Judge:

Jacques Yves Sebastien Duroseau, a naturalized United States citizen, was convicted of five offenses springing from his plan to take weapons to his native Haiti in an attempt to help the Haitian government quell gang violence overtaking the country. On appeal, Duroseau challenges the conviction on Count Five of the indictment, which charged him with transporting firearms to the Haitian Army, in violation of 18 U.S.C. § 922(a)(5). We agree with Duroseau that the government failed to prove a violation of § 922(a)(5) and that the district court erred by denying his Rule 29 motion for judgment of acquittal on that count. Accordingly, we vacate Duroseau's conviction on Count Five and remand for the district court to enter a judgment of acquittal on Count Five and resentence Duroseau on the remaining convictions.

I.

Duroseau was born in Haiti in 1986. During his childhood, Haiti suffered multiple natural disasters and repeated cycles of political upheaval. Duroseau was inspired by the United States Marines he saw working in Haiti to help rebuild the country, and he hoped to join their ranks one day.

Duroseau became a permanent resident of the United States in 2010 and joined the Marines in 2011. He became a naturalized citizen in 2013 and took the oath of citizenship on a battlefield in Afghanistan. Upon his return from Afghanistan, Duroseau was diagnosed with post-traumatic stress disorder and possible traumatic brain injury.

Duroseau subsequently was stationed in North Carolina. While in North Carolina, Duroseau became increasingly concerned about the worsening political and humanitarian conditions in Haiti. Duroseau, a seasoned firearms instructor, decided that he should return to Haiti to "train the Haitian military in marksmanship to defeat the armed gangs wreaking havoc in the country." Brief of Appellant at 5.

In furtherance of his plan to help Haiti, Duroseau in the fall of 2019 asked his Marine-Reservist girlfriend Taylor Hickey to create fraudulent military orders purporting to send him to Haiti on official business. Hickey created the requested orders (which described Duroseau as a colonel rather than his actual rank of sergeant) and bought Duroseau airline tickets to travel to Haiti. On November 11, 2019, Duroseau packed up eight firearms and ammunition,[1] and Hickey drove him to the airport in New Bern, North Carolina. Hickey (in uniform) accompanied Duroseau to the airport and played the role of his subordinate by jotting down directions from Duroseau in a notebook. Duroseau properly declared the firearms and ammunition, and the airline checked him in and processed the firearms and ammunition for the flight to Haiti.

Duroseau was detained by the Haitian National Police at the airport upon landing in Port-au-Prince, and the police seized the firearms. Duroseau spent several weeks in custody in Haiti before he was turned over to the Naval Criminal Investigative Service.

---

[1] Duroseau had a Ruger Precision rifle, three Sig Sauer handguns, a Berretta 9-mm handgun, a Rock Island Armory 1911 handgun, and two AR-15-type handguns. He also had numerous optical sights/rangefinders and body armor.

4

Duroseau was charged in a superseding indictment with six counts, including four counts relating to unlawful exportation (Counts One through Four) and one count of impersonating an officer or employee acting under the authority of the United States (Count Six). This appeal involves Count Five, which alleged that Duroseau violated 18 U.S.C. § 922(a)(5) by willfully transporting firearms "to the Haitian army," an entity that is not a licensed firearms importer or dealer and does not maintain a place of business in North Carolina, Duroseau's state of residence. J.A. 49.

The jury convicted Duroseau on all charges except Count Six. The district court sentenced Duroseau to 63 months' imprisonment. Duroseau appeals, challenging only his conviction on Count Five for violating 18 U.S.C. § 922(a)(5).

II.

Section 922(a)(5) is part of the Gun Control Act of 1968, which was enacted in order to "strictly control the illegal transfer of firearms." *United States v. Colicchio*, 470 F.2d 977, 979 (4th Cir. 1972). To that end, the statute provides that, subject to two exceptions not applicable in this case, it is unlawful

> for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides . . . .

18 U.S.C. § 922(a)(5). The statute thus creates a "single offense of transferring (by any one of several means) a firearm by an unlicensed person to any other unlicensed person who

5

resides in a different state than the state in which the defendant resides." *United States v. James*, 172 F.3d 588, 593 (8th Cir. 1999).

Duroseau raises three challenges to his conviction under § 922(a)(5). He argues that the district court erred by denying his motion for judgment of acquittal as to Count Five because the government failed to prove that he actually transferred the firearms to another person, as required by the statute. *See* Fed. R. Crim. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."). Duroseau also contends he was entitled to a judgment of acquittal because § 922(a)(5) is concerned only with *interstate* firearm transfers and therefore does not apply to his intended *international* transfer. Finally, Duroseau contends that the district court gave an erroneous instruction when responding to a jury question about the requirements to convict under § 922(a)(5). As we will explain, we agree with Duroseau's first argument, which makes it unnecessary to address the others.

A.

Before turning to the merits, we pause to address the government's assertion that Duroseau's "to another person" argument is not properly before this court.

Under Rule 29 of the Federal Rules of Criminal Procedure, the defendant may move for a judgment of acquittal at the close of the government's case, after the close of all evidence, or after the jury returns a guilty verdict. *See* Fed. R. Crim. P. 29(a), (c). If the motion is made during trial, the district court "may reserve decision on the motion, proceed with the trial . . . , submit the case to the jury, and decide the motion either before the jury

6

returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." Fed. R. Crim. P. 29(b).

"When a defendant raises specific grounds in a Rule 29 motion, grounds that are *not* specifically raised are waived on appeal" unless "a manifest miscarriage of justice has occurred." *United States v. Chong Lam*, 677 F.3d 190, 200 & n.10 (4th Cir. 2012) (internal quotation marks omitted); *see United States v. Fall*, 955 F.3d 363, 374 (4th Cir. 2020); *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007); *United States v. Quintana–Torres*, 235 F.3d 1197, 1199 (9th Cir. 2000).[2] At the close of the government's case, Duroseau moved for a judgment of acquittal on Count Five only, arguing that § 922(a)(5) does not apply to the transfer of firearms in foreign commerce. The district court took the motion under advisement and denied it after the jury returned its verdict. Because Duroseau did not initially argue that the evidence did not show a transfer to an unlicensed person, the government contends Duroseau waived the claim and cannot pursue it on appeal. We disagree.

---

[2]    Although these cases generally speak in terms of waiver, we believe "forfeiture" is the more precise term. Waiver "is the intentional relinquishment or abandonment of a known right," *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted), while forfeiture "is the failure to make the timely assertion of a right," *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (internal quotation marks omitted). "Courts may review a forfeited claim for plain error. But when a claim is waived, it is not reviewable on appeal, even for plain error." *Id.* (citation and footnote omitted). Because courts do in fact review the newly asserted grounds for Rule 29 motions to determine if a manifest miscarriage of justice occurred, it is clear that these Rule 29 cases actually involve forfeiture, not waiver.

7

The point of error-preservation rules, including the requirement that a Rule 29 motion include all grounds supporting acquittal, is to give the district court the first opportunity to consider an issue and correct any errors. *See Chong Lam*, 677 F.3d at 200 ("Appellants failed to raise this argument in their Rule 29(c) motion, however, *precluding the district court from having the first opportunity to opine on it*." (emphasis added)); *accord United States v. Ramos*, 852 F.3d 747, 752 (8th Cir. 2017) ("A basic reason for requiring litigants to preserve issues for appeal is to give the district court an opportunity to prevent or correct mistakes in the first instance."). Although Duroseau did not initially question whether the evidence showed a transfer to another person, the issue was considered and addressed in depth by the district court during the trial. *See* J.A. 615-19; 624-25.

The court raised the issue in response to a question from the jury during deliberations about Count Five. The jury's question noted that the indictment "states items were delivered to the Haitian Army. If the defendant was apprehended before delivery and the prosecution has made a compelling argument for intent to deliver, shall that be considered?" J.A. 614-15. When discussing the jury's question with the parties, the district court explained in detail and cited cases supporting its view that when a defendant is charged with "transporting" firearms under § 922(a)(5), there is no requirement that the firearms be delivered or transferred to another person. *See, e.g.*, J.A. 616 ("[T]ransport does not and cannot mean the same as transfer or give or deliver. Transport is broader in that

8

sense."); J.A. 618-19 ("[T]he Supreme Court talked about the concept of transport . . . in *Muscarello v. United States*[3]. . . .").

The district court ultimately sent a note back to the jury explaining that

> A person violates 18 U.S.C., Section 922(a)(5) if he "transports" a firearm to another "person" willfully, and at the time neither the defendant nor the person to whom it was transported was a licensed dealer, importer, manufacturer, or collector, and the defendant knew or had reasonable cause to believe that the "person" to whom he transported the firearm resided outside North Carolina. Transport does not require delivery or transfer to another "person."

J.A. 615. Counsel for Duroseau objected to the district court's response to the jury "as well as for the basis that we made in our Rule 29 motion." J.A. 618. Immediately after mentioning *Muscarello* and the definition of "transport," the district court noted that Duroseau's "objection is preserved on the issue." J.A. 619.

Approximately an hour later, the jury asked the court "to explain [its] note more." J.A. 619. The court brought the jury into the courtroom the next morning, and the foreperson explained that "[W]e're torn on the transportation item and to the . . . Haitian Army, as [the indictment] reads. So we just wanted some more clarification on that because it was stopped in the process." J.A. 624. The district court responded that § 922(a)(5)

> talks about transfer, sell, trade, give, transport or deliver. Transport is the broadest coverage that Congress has in that statute. And the concept of transport does not require delivery to the Haitian Army. Delivery is a narrower word than transport as defined in the instructions.
>
> So to the extent the question is: Does the word "transport" require the Haitian Army to actually come into possession of those weapons, the answer to that question is no.

---

3      *Muscarello v. United States*, 524 U.S. 125 (1998).

J.A. 625. The jury left the courtroom, and the district court then gave counsel the citation for *Muscarello*, "the Supreme Court case that references the breadth of the term 'transport.'" J.A. 625. After the jury found Duroseau guilty of Counts One through Five, the district court denied Duroseau's Rule 29 motion on Count Five:

> [I]n connection with the Rule 29 motion, I have considered that motion and considered the cases, including an additional case on the issue associated with the topic. I mean, I've already cited the *Muscarello v. United States* case and then the Tenth Circuit case, but I'll also cite *Flores-Abarca v. Barr*, 937 F.3d 473, 485, (5th Cir. 2019) in denying the Rule 29 motion as to Count 5.

J.A. 648.

As the proceedings outlined above demonstrate, the question at the heart of this appeal—whether § 922(a)(5) requires that the firearms be transported *to* another person—was brought up by and thoroughly considered by the district court. Moreover, given the court's citation to *Muscarello* when denying the Rule 29 motion, it is apparent that the district court understood Duroseau's motion to encompass that issue in addition to the issue raised in the initial Rule 29 motion. Under these circumstances, we believe the issue presented on appeal is properly before us. *Cf. Ramos*, 852 F.3d at 752-53 ("[T]he district court *sua sponte* considered the sufficiency of the evidence at the close of the evidence as if Ramos had moved for a judgment of acquittal, and ruled that it would deny such a motion. A basic reason for requiring litigants to preserve issues for appeal is to give the district court an opportunity to prevent or correct mistakes in the first instance. Here, the district court had that opportunity and took it when it considered the question as if Ramos had raised it. Even if Ramos technically forfeited, or even waived, his right to move for a judgment of acquittal, he did not forfeit or waive his right to appeal from the trial court's

10

*sua sponte* order holding that the evidence was sufficient to sustain a guilty verdict."
(citation omitted)).

B.

We turn now to the merits of Duroseau's challenge to the sufficiency of the
evidence.

As noted above, § 922(a)(5) provides that it is unlawful for any unlicensed person
"to transfer, sell, trade, give, transport, or deliver any firearm *to any [unlicensed] person*"
who does not reside in the defendant's state of residence. 18 U.S.C. § 922(a)(5) (emphasis
added). Because there is no general attempt statute in the federal criminal code, [4] "attempts
to commit a crime are punishable only if the statutory definition of the crime itself
proscribes attempts." *United States v. Muresanu*, 951 F.3d 833, 837 (7th Cir. 2020).
Section 922(a)(5) does not mention or otherwise proscribe attempts to transfer firearms;
accordingly, the statute criminalizes only *completed* transfers of firearms between
unlicensed parties. *See United States v. Tyson*, 653 F.3d 192, 204 n.16 (3d Cir. 2011) ("By
its terms, § 922(a)(5) does not criminalize the *attempt* to transfer a firearm to an out-of-
state resident. . . . [but instead] criminalizes the *actual transfer* of firearms." (emphasis
added)); *United States v. Joseph*, 530 F. App'x 911, 917-18 (11th Cir. 2013) ("[Section]

---

[4] Under 18 U.S.C. § 2(a), a person who aids and abets an offense "is punishable
as a principal." Aiding or abetting is an alternate theory of conviction available to the
government in every case, whether or not it is explicitly alleged in the indictment. *See, e.g,
United States v. Day*, 700 F.3d 713, 720 (4th Cir. 2012) ("[A] defendant may be convicted
of aiding and abetting under an indictment which charges only the principal offense."
(internal quotation marks omitted)). There is no similar statute regarding attempts to
commit a federal offense.

11

922(a)(5) only makes it illegal 'to transfer, sell, trade, give, transport, or deliver any firearm' to an out-of-state resident. The statute does not prohibit *an attempt* to do so." (internal citation and footnote omitted)).

The government agrees that § 922(a)(5) does not criminalize attempts, and it insists that Duroseau was not convicted of an attempt offense. According to the government, Duroseau's argument "might have some resonance if he had been charged and found guilty of 'transferring' or 'giving' firearms to a person, because those terms arguably contemplate reciprocal acts by a giver and a taker. The term 'transport,' however, does not require that a recipient take possession of the item." Brief of Respondent at 17-18 (citations and internal alterations omitted). The government thus contends that Duroseau's "'transport' offense was complete upon his unlawful movement of firearms to his intended recipients," such that Duroseau was not convicted on a theory of "attempted transport." *Id.* at 11-12. We disagree.

It is true that, generally speaking, one can "transport" goods from point to point without delivering those goods directly to another person. *See Muscarello*, 524 U.S. at 134-35 (distinguishing the verbs "carry" and "transport" as used in 18 U.S.C. § 924(b): "'Carry' implies personal agency and some degree of possession, whereas 'transport' does not have such a limited connotation and, in addition, implies the movement of goods in bulk over great distances. . . . If Smith, for example, calls a parcel delivery service, which sends a truck to Smith's house to pick up Smith's package and take it to Los Angeles, one might say that Smith has shipped the package and the parcel delivery service has transported the package. But only the truck driver has 'carried' the package in the sense of 'carry' that we

12

believe Congress intended. Therefore, 'transport' is a broader category that includes 'carry' but also encompasses other activity."). That observation, however, does not resolve this case.

As we have explained, § 922(a)(5) creates a single offense of transferring firearms between unlicensed parties, and it identifies multiple ways that the transfer can occur—by selling, trading, giving, transporting, or delivering. But whichever means of transfer is involved, the statute requires that the firearms be transferred "to any [unlicensed] person." 18 U.S.C. § 922(a)(5). Thus, regardless of the meaning of "transport" in isolation, the unambiguous language of the statute explicitly requires the firearms to in fact be transferred to an unlicensed recipient before there is a violation of the statute. *See United States v. Fries*, 725 F.3d 1286, 1293 (11th Cir. 2013) ("[Section] 922(a)(5) requires proof that the defendant sold a firearm to an unlicensed person as part of the government's prima facie case . . . ."). As long as the transfer of firearms (by whatever means) is completed, a person charged with transporting the firearms need not have directly delivered the firearms to the unlicensed recipient. But if the firearms are not ultimately transferred (by whatever means) to an unlicensed recipient, there is no completed offense and no person can be charged with violating § 922(a)(5).[5]

---

[5] For example, a defendant charged with transporting firearms might leave a car loaded with the firearms at a designated location, to be retrieved later by the unlicensed transferee. If the transferee drives away in the car, the § 922(a)(5) offense is complete (assuming the residency requirements are satisfied). But if the car and firearms are swept away by a hurricane before the transferee takes possession, § 922(a)(5) has not been violated, because it criminalizes only completed transfers.

The government also contends that Duroseau was properly convicted of a completed transportation offense because he managed to get the firearms to Haiti, where the intended recipients were located. *See* Brief of Respondent at 19 ("Duroseau did transport firearms *to* a person (or entity)—his intended recipients were in Haiti and he flew *to* Haiti with the firearms."); *id.* at 21 (suggesting that a transport offense is not complete if the defendant is arrested with the firearms at his home airport). This argument reflects the same misunderstanding that we have just addressed. Section 922(a)(5) criminalizes completed offenses only, and a completed transfer *to an unlicensed recipient* is an element of the offense, even when the defendant is charged with transporting firearms. Transporting firearms to an out-of-state location is not sufficient for conviction. The person responsible for transporting firearms from Point A to Point B may complete his assigned duties when he drops off the firearms at Point B, but the criminal offense under § 922(a)(5) is not complete unless the firearms are actually transferred to an unlicensed person or entity.

The government also contends that Duroseau's conviction can be sustained because the firearms were taken by the national police, "whom [Duroseau] had said he wanted to train." Brief of Respondent at 19. Again we disagree.

Count Five of the superseding indictment alleged that Duroseau "willfully transport[ed] firearms . . . to *the Haitian Army*." J.A. 49 (emphasis added). The government is bound by the allegations of the indictment and cannot now claim that the conviction was based on the police seizure of the firearms at the airport, a theory that was never presented to the jury. *See Chiarella v. United States*, 445 U.S. 222, 236 (1980) ("[W]e cannot affirm a criminal conviction on the basis of a theory not presented to the jury. . . .").

14

Moreover, the seizure of the firearms by the police incident to arrest does not meet the statutory requirement that Duroseau willfully transport the firearms *to* an unlicensed person or entity. The national police who arrested Duroseau were not the intended recipients of the firearms, and Duroseau did not voluntarily give them the weapons. That Duroseau may have hoped to improve Haitian policing if his plan had worked cannot somehow convert the police seizure into a voluntary action by Duroseau.

Viewing the evidence in the light most favorable to the government, *see United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019), it is apparent that the government failed to present evidence showing that Duroseau violated § 922(a)(5). Duroseau clearly transported the firearms to Haiti, but the firearms were seized at the airport by the police. Because the firearms were seized, the government failed to prove a completed transfer of firearms to an unlicensed person, as required by the statute. At most, the government's evidence showed an attempt to transfer firearms between unlicensed parties. But as we have explained, § 922(a)(5) does not criminalize attempted transfers. The district court therefore erred by denying Duroseau's motion for a judgment of acquittal on Count Five.

## III.

To summarize, we hold that, because § 922(a)(5) does not proscribe attempts to violate the statute, conviction under § 922(a)(5) requires a completed transfer of firearms from an unlicensed person to an unlicensed person who does not reside in the defendant's state of residence. A defendant charged with transporting firearms under § 922(a)(5) need not himself directly transfer the firearms to the unlicensed recipient, but the transfer must

15

be complete before there is criminal liability under the statute. Because Duroseau was arrested and the firearms seized by police at the airport in Haiti, the transfer of the firearms to an unlicensed person was not completed, and the district court therefore erred by denying Duroseau's Rule 29 motion on Count Five.

Accordingly, we hereby vacate the district court's judgment and remand for the district court to enter a judgment of acquittal on Count Five and conduct resentencing proceedings on the remaining counts.

*VACATED AND REMANDED*